**In re Roslyn Weed BRAGG and Edgar Earl Bragg, Debtors.**

**Bankruptcy No. 85–01535.**

United States Bankruptcy Court, M.D. Alabama, S.D.

Nov. 27, 1985.

---

Lexa Dowling, Ernest Hornsby, Johnson, Huskey, Hornsby & Etheredge, Dothan, Ala., for movant.

Edward M. Price, Jr., Farmer, Price, Espy & Smith, Dothan, Ala., for contestant.

## OPINION ON MOTION FOR CONTEMPT AND SANCTIONS

A. POPE GORDON, Bankruptcy Judge.

The motion of Roslyn Weed Bragg for an order of contempt and sanctions against a creditor, AmSouth Bank, was heard November 20, 1985. Present for the debtor were Roslyn Weed Bragg and her counsel. Present for AmSouth Bank were Mr. Conway, an officer of AmSouth Bank, and counsel.

Following the trial, the parties were given the opportunity to file briefs. The case was taken as submitted on November 26, 1985.

The following findings of fact and conclusions of law are made pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure and are based upon testimony and arguments and admissions of counsel.

### Procedural Issue

In open court, counsel for the debtors sought and was given leave to amend the motion for contempt and sanctions to a motion under 11 U.S.C. § 362(h). That section, added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, gives debtors a private cause of action for a violation of the automatic stay imposed by 11 U.S.C. § 362(a). *Fundamentals of Bankruptcy Law*, George M. Treister, et al., at page 152. The case proceeded and will be decided under § 362(h).

### Issue Presented

The parties admit that the Chapter 13 petition of the debtors was filed with the Clerk of the Bankruptcy Court at 8:00 a.m.

on Monday, September 16, 1985.[1] On Tuesday, September 17, 1985, AmSouth Bank repossessed two cars belonging to the debtor on which the bank holds a security interest lien.

It is clear that the bank violated the automatic stay provision of § 362(a). However, to have a cause of action under § 362(h) the debtors must prove that the violation was willful. For the violation to have been willful, the bank must have deliberately and intentionally committed an act to obtain possession of property of the estate, the cars, after the bank learned of the filing of the Chapter 13 petition or after the bank possessed sufficient facts which would cause a reasonably prudent person to make further inquiry to determine whether a petition had been filed.

The threshold issue presented to the court is: was the violation of § 362(a) by AmSouth Bank willful? The court concludes that the first repossession, that of a 1979 Monte Carlo car, was not a willful violation. The second repossession, that of a 1978 Monte Carlo car, was a willful violation of the automatic stay.

## Findings of Fact

There is no convincing evidence that the bank had knowledge or should have had knowledge of the filing of the Chapter 13 petition until after the 1979 Monte Carlo driven by Roslyn Bragg had been repossessed. As early as June, 1985, Dianne Eggers, an employee of AmSouth Bank, called the debtor regarding past due car payments. The debtor referred Mrs. Eggers to debtor's counsel. Ms. Eggers called debtor's counsel and was told a bankruptcy petition would be filed. However, the petition was not filed until some three months later.

After the debtor had fallen behind in her car payments to the bank, an officer of the bank advised her that the bank would repossess the cars if the payments were not brought up to date. The bank also withdrew funds from debtor's account at the bank to apply to the delinquent balance due. She made her attorney aware of the bank's actions.

On Friday, September 13, 1985, the petition was mailed to the clerk of the court whose office is in Montgomery, Alabama, some 100 miles from debtor's home in Dothan, Alabama. Despite awareness of the prior actions of the bank, including threats of repossession resulting from the debtor's continued failure to make payments on the automobiles, neither the debtor nor her counsel took measures to notify the bank that the petition had been mailed and filing was imminent.

In early September, the bank engaged Leonard Bowen to repossess the automobiles for the bank. On the morning of September 17, 1985, Bowen went with Joe Davis, the owner of a wrecking service, to the debtor's dance studio where the 1979 Monte Carlo car, the car used by the debtor, was parked. Bowen watched as Davis connected the car to a wrecker for towing. Bowen then went into the dance studio to inform the debtor that he had repossessed her car. The debtor protested that she had filed for bankruptcy. She offered to show Bowen a copy of her bankruptcy petition but he said he did not want to see it. She then called her attorney and Bowen talked to the attorney at her request. Bowen denies that the attorney advised him that a petition under Chapter 13 had been prepared and mailed to the clerk of the court for filing. The court places no credibility in his denial. When Bowen exited the dance studio, the 1979 Monte Carlo had been towed away.

Bowen then went with Davis to Dothan High School. There, with the debtor's daughter and her friends watching, the second car, the 1978 Monte Carlo generally used by the daughter, was connected to a wrecker and towed away. The daughter testified concerning the embarrassment

---

1. The date of receipt stamped on the petition was September 13, 1985. A handwritten correction changed the date to September 16, 1985. An investigation has shown that the September 13, 1985, date was a clerical error and was properly corrected by the clerk's office.

this caused her and the jeering comments of her peers.

Immediately following the telephone conversation with Bowen, debtor's counsel called counsel for AmSouth Bank. In that conversation, it is undisputed that debtor's counsel admitted she did not know whether the petition had yet been received by the clerk of the court. She did know that the petition had been mailed on Friday. Following the conversation, the bank's counsel immediately called the bank and advised the bank to release the cars.

The cars were repossessed between 9:30 a.m. and noon and were back in the debtor's possession around 6:00 p.m. that evening.

Neither the bank nor bank's counsel called the clerk's office on the day of the repossessions to verify the filing of the Chapter 13 petition. Instead, the cars were released upon learning from debtor's counsel that a petition had been mailed to the clerk's office and that filing was about to occur if it had not already taken place.

The bank did not instruct Bowen prior to the repossession with respect to the impact of bankruptcy on the act of repossession of property. Bowen so testified and his testimony was corroborated by a bank officer.

### Conclusions of Law

■ The contact between Dianne Eggers and debtor's counsel three months before the filing of the petition was too tenuous and speculative to put the bank on notice of the September filing. The bank waited three months before repossessing the cars. During that period, the bank received no voluntary payments from the debtor and no notice of the filing of the petition. Further, it must be emphasized that it is the filing of a petition and not the debtor's intent to file which invokes the automatic stay.

The debtor cites *In the Matter of Behm*, 44 B.R. 811 (B.C.W.D.Wis.1984), for the proposition that when a debtor informs a creditor that the debtor intends to file bankruptcy, the creditor has sufficient knowledge of the filing to support a finding of a willful violation of the automatic stay. However, an examination of the *Behm* case shows that there was a conflict in the testimony as to whether Behm had told a creditor of his intent to file a bankruptcy petition. *Supra* at 812, second column, first paragraph. Without resolving the conflict, the court found the creditor had willfully violated the stay based upon other evidence. *Supra* at 813, first column, second paragraph.

■ It is, however, the rule in this jurisdiction that notice of the filing of a petition need not be a formal notice of the commencement of a case where the creditor has sufficient facts which would cause a reasonably prudent person to make further inquiry. *Edwards v. Pullman Trailmobile*, 5 B.R. 663, 2 C.B.C.2d 1027 (B.C.M. D.AL 1980).

■ The court concludes that the conversation about the Chapter 13 petition between Bowen, who was acting as agent for AmSouth Bank, and debtor's counsel following the repossession of the first car was sufficient notice to the bank of the possible filing of a petition. Considering this conversation along with the offer of the debtor to show a copy of the petition to the agent convinces the court that the bank clearly had sufficient facts to be on notice of a possible bankruptcy filing and became obligated to make further inquiry before repossessing the second car. A simple telephone call to the clerk's office would have revealed the filing. The bank failed to so inquire. Therefore, the repossession of the car from the daughter at the high school, the 1978 Monte Carlo, was intentionally and deliberately done. An act deliberately or intentionally done is willful. *Tel-A-Communications, Inc. v. Auto-Use*, 50 B.R. 250 (B.C.Conn.1985). Therefore, this second repossession was a willful violation of § 362(a).

The bank argues that the evidence shows that Bowen was not aware that the filing of a bankruptcy petition imposed a stay on any action to recover property of the estate. Therefore, the act of Bowen in repos-

sessing the second car could not have been a willful violation. This argument is not well taken. The bank can be excused for an act committed under ignorance of fact. Ignorance of the law is no excuse. The bank may not fail to instruct its agent on the effect of the automatic stay, and then seek to use that failure as a shield against liability.

### Damages

Section 362(h) provides that the debtor shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

■ Only the second repossession was a willful violation of § 362(a). Therefore, only damages to the debtor or her property following repossession of the first car may be compensated here under § 362(h). The debtor testified that in her opinion, the value of the car before repossession was $1,500 and after repossession the value was $1,350 to $1,375. The debtor alleged that the front suspension had to be realigned and the rear bumper had been scratched. Joe Davis testified that he had examined the vehicle both before and after towing and that there was no visible damage. However, his examination would not have revealed suspension misalignment caused by the towing. The court finds that $50 is adequate compensation for such damage.

■ The daughter is not the debtor in this case and compensation for her embarrassment at her high school is beyond the scope of § 362(h). Damages to the debtor or her property by the bank arising out of repossession of the first car, if any, did not result from a willful violation of § 362(a), as already found, and are likewise beyond the scope of § 362(h).

■ The second repossession should never have occurred. Had the bank properly instructed its agent, it would not have occurred. The court finds that punitive damages of $250 are necessary to deter the

bank from willfully violating 11 U.S.C. § 362(a) in the future in cases such as this.

Attorney's fees should be awarded to debtor's attorney in this case to make the debtor whole. A separate hearing will be held to determine of the amount of the fees.

An appropriate order and judgment for the debtor and against the bank will enter.