In re Peter CONSTANTINO and Cynthia Constantino, Debtor(s).

Peter Michael CONSTANTINO, Plaintiff(s),

v.

FLANDERS HILL DEVELOPMENT, Defendant(s).

Bankruptcy No. 87–0021.
Related Case: 86–00005.

United States Bankruptcy Court, N.D. Ohio, W.D.

Oct. 1, 1987.

Douglas A. Wilkins, Toledo, Ohio, for plaintiff.

Thomas J. Sheperak, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on Complaint for Enforcement of Injunction and Attorney Fees. At Pre–Trial, the parties agreed to a binding one hour Mini–Trial with both parties giving up their right to cross-examination. At the Mini–Trial, each side had thirty minutes to present the arguments and testimony that they wished the Court to consider in rendering its decision. The Court has reviewed the arguments, the testimony, and the materials presented. Based on that review, and for the following reasons, the Court finds for the Plaintiffs, and awards no fees or costs.

### FACTS

The Debtor, Peter M. Constantino, was a plumbing contractor doing business under the name "Constantino Plumbing Contractors". In the course of this business, Mr. Constantino did some plumbing work on property owned by Flanders Hill Development Corporation (hereinafter "Flanders Hill").

Flanders Hill asserts that although Mr. Constantino was paid in full for the plumbing work, he failed to pay two of his suppliers: Norwest Plumbing & Heating Supply Co. and North Star Plumbing Co. As a result, the two suppliers placed mechanic's liens on Flanders Hills' projects.

On January 3, 1986, Mr. Constantino and his wife filed for protection under 11 U.S.C. Chapter 7. Attorney Chris E. Steiner represented the Constantinos in the main case.

Kevin Conyngham, a branch manager for Norwest Plumbing & Heating, testified that he met with Joseph J. Mercurio, President of Flanders Hill, at some time between January 6 and January 14, 1986. Mr. Conyngham stated that he and Mr. Mercurio discussed the liens which Norwest had placed on the Flanders Hill project. Mr. Conyngham further testified that Mr. Mercurio told him that Mr. Constantino had left town and was going bankrupt, and that Norwest had assumed the risk of dealing with Mr. Constantino. Mr. Mercurio testified that Mr. Conyngham's recollection of their meeting was essentially correct as to the discussion of the mechanic's liens, but that they never talked about bankruptcy.

On several occasions during January and February of 1986, Mr. Steiner met with Thomas J. Sheperak, an attorney for Flanders Hill. Mr. Sheperak requested the first meeting because Mr. Mercurio had informed him of the filing of the mechanic's liens against Flanders Hill. Because there was some question as to whether the dates on certain invoices had been altered, Mr. Sheperak wanted Mr. Constantino's copies of invoices for comparison.

Mr. Steiner and Mr. Sheperak met on January 27, 1986. Mr. Steiner testified that he told Mr. Sheperak, at the meeting, that Mr. Constantino had filed bankruptcy and moved to Colorado. Also, since Mr. Constantino had the invoices with him in Colorado, they would be unavailable until Mr. Constantino returned for the § 341 first meeting of creditors on February 5, 1986. Mr. Steiner further stated that he advised Mr. Sheperak that John Hunter had been appointed Trustee, and that the Trustee would have to be involved.

Mr. Sheperak testified that during the January 27th meeting with Mr. Steiner, "Mr. Steiner did not, at any time, specifically tell me that a bankruptcy petition had been filed. Nor did Mr. Steiner tell me that there was a Trustee involved, at any time." Mr. Sheperak stated that Mr. Steiner was very close-lipped on the subject. Mr. Sheperak also said that he did not press for more information because he thought that he and Mr. Steiner would soon be on an adversarial footing over the liens.

Mr. Steiner acquired the invoices on February 6, 1986, one day after the first meeting of creditors. On February 10, Mr. Steiner delivered the invoice documents to Mr. Sheperak. Mr. Steiner testified that he mentioned to Mr. Sheperak that the creditor's meeting had gone well despite the telephone threats against Mr. Constantino and his family. Mr. Sheperak testified that Mr. Steiner had only mentioned that he had met with creditors. Mr. Sheperak said that he had merely commented, "uh oh, that sounds like fun." Mr. Sheperak denied that Mr. Steiner said it was a first meeting of creditors, just that he met with creditors. Mr. Sheperak testified further, "After that, on numerous occasions, Mr. Mercurio asked whether Mr. Constantino had filed bankruptcy." Mr. Sheperak stated that he thought the Constantinos had not filed because no notice had been received and he had assumed that Mr. Constantino would list Mr. Mercurio as a creditor.

The Constantino's Discharge Hearing was held on April 14, 1986. However, a review of the Court's records reflects that the discharge was not granted at that time.

On April 17, 1986, the first lawsuit was instituted by Norwest on their mechanic's liens. Mr. Mercurio received notice of the Norwest suit on April 23, 1986 and contacted Mr. Sheperak about them. A few days later Mr. Sheperak met Mr. Steiner and thanked him for the use of the invoices which had been provided earlier. Mr. Sheperak testified that he asked Mr. Steiner at that time, "How are the bankruptcy proceedings going?" Mr. Steiner replied, "They are going." Mr. Sheperak asked, "Have you filed yet?" Mr. Steiner answered, "Oh, yeah." Mr. Sheperak stated that Mr. Steiner did not mention the fact that Mr. Constantino had already received his discharge. Mr. Sheperak also asserted that he was waiting to be served with notice of the Bankruptcy, because he assumed that as a potential claimant, Mr. Mercurio would be listed and served. Mr. Sheperak testified that he did not learn of Mr. Constantino's discharge until some later date.

On May 27, 1986, North Star Plumbing Co. filed the second lawsuit against Flanders Hill for enforcement of mechanic's liens.

The Order granting the Constantino's discharge was signed on August 11, 1986.

On October 31, 1986, Mr. Sheperak filed a Third–Party Complaint and Praecipe in the Court of Common Pleas, Lucas County, Ohio. The Third–Party Complaint alleges that Flanders Hill paid Mr. Constantino in full for the plumbing fixtures which were the subject of the mechanic's liens, and that Flanders Hill was therefore entitled to indemnification and reimbursement from Mr. Constantino for any judgment against Flanders Hill.

Sometime in November, 1986, Mr. Steiner received a telephone call from Mr. Constantino asking about his potential liability on the Complaint. Mr. Steiner testified that he advised Mr. Constantino that the Complaint was for a pre-petition debt, which had been discharged. A few days after Mr. Constantino's phone call, Mr. Steiner testified that he talked to Mr. Sheperak and asked him "What about the Stay? You can't file that." Subsequently, Mr. Steiner stated that he made numerous attempts to contact Mr. Sheperak, but was unsuccessful. Because Flanders Hill's Complaint was not withdrawn, Mr. Constantino was forced to file an Answer to the Complaint.

The two lawsuits, brought by Norwest and North Star, were settled. North Star's suit was simply dismissed. Norwest received Four Hundred and Sixty-two Dollars ($462.00), plus One Hundred and Fifty Dollars ($150.00) in court costs.

On January 16, 1987, an Adversarial Complaint was filed on behalf of Mr. Constantino. The Complaint alleges that Flanders Hill violated 11 U.S.C. § 524(a), the injunction against the collection of discharged debts. The Complaint seeks reimbursement for attorneys fees, the cost of filing the Adversary Complaint, and punitive damages.

On February 27, 1987, Mr. Sheperak filed an Answer and Counterclaim. The Answer stated that Flanders Hill was not provided with notice of the Constantino bankruptcy, nor the deadline for filing claims or a Complaint to contest dischargeability. It also states that no notice was received that the Constantinos had been discharged. The Answer further alleges that the debt is a post-petition contingent claim which was not discharged. Finally, because Flanders Hill was not listed on the Debtor's schedules, the Answer contends that the debt was not discharged.

The Flanders Hill counterclaim states that Mr. Constantino took the payments from Flanders Hill with the intention of filing bankruptcy and not paying his suppliers. The Counterclaim goes on to assert that Mr. Constantino knew, or should have known, that the diversion of funds would result in the mechanic's liens being filed, and further, that there was intent to defraud Flanders Hill. The Counterclaim seeks a declaration of nondischargeability for Flanders Hill's claims against Mr. Constantino, and fees and costs for defending the suits brought by Norwest and North Star, including attorney's fees. The Counterclaim also asks for punitive damages.

### LAW

11 U.S.C. § 524(a)(2) states:

§ 524. Effect of discharge

(a) A discharge in a case under this title—

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

Flanders Hill asserts several defenses to the allegation that the § 524 injunction was violated by the filing of the Third–Party Complaint. First, the Court will consider the defenses based on the lack of notice and knowledge of the Bankruptcy filing and discharge.

■ Although Flanders Hill was not listed as a creditor by the Constantinos, Flanders Hill can be charged with notice if they were in possession of sufficient facts such as would cause a reasonably prudent person to make further inquiry. *In re Taco Ed's, Inc.,* 63 B.R. 913, 931 (Bankr.N.D. Ohio 1986); *In re Bragg,* 56 B.R. 46, 49 (Bankr.M.D.Ala.1985); *Matter of DePoy,* 29 B.R. 471, 476 (Bankr.N.D.Ind.1983); *Matter of Thacker,* 24 B.R. 835, 838 (Bankr.S.D.Ohio 1982); *In re Brooks,* 12 B.R. 283, 284 (Bankr.W.D.Mo.1981); *In re Asters,* 11 B.R. 483, 484 (Bankr.D.R.I. 1981); *In re MacDonald,* 6 B.R. 23 (Bankr. N.D.Ohio 1980); *In re Edwards,* 5 B.R. 663, 665 (Bankr.M.D.Ala.1980). In other words, it is the opinion of this Court that "willful blindness" is the equivalent of notice. Information concerning whether a Debtor has filed for Bankruptcy, or has been granted a discharge, is available by telephone, at no cost. (Because this information can be provided merely by reference to a bankruptcy case index card, it is not subject to the search fees outlined in 28 U.S.C. § 1930.) Therefore, it is the creditor's responsibility, *prior to the filing of an action,* to check whether a petition has been filed when the facts indicate that relief is likely to be sought in the near future.

■ In the case at bar, Mr. Mercurio repeatedly asked Mr. Sheperak about whether Mr. Constantino had filed. Even if Mr. Steiner was mistaken about the exact time frame in which bankruptcy was discussed, the subject was certainly "in the air". Moreover, ignoring the question of whether the facts warrant the finding of a duty to inquire, Mr. Sheperak testified that Mr. Steiner informed him in late April of 1986 of the Constantino filing. The Third–Party Complaint was not filed until October of 1986. Either the automatic stay was

in effect under 11 U.S.C. § 362(a), or the § 524(a) injunction was in operation, preventing the commencement or continuation of an action against the Debtors to collect a pre-petition debt. Knowing this, it was incumbent upon Mr. Sheperak to determine the status of Mr. Constantino's case before filing the Third–Party Complaint.

■ Flanders Hill has asserted two other defenses which should be addressed. The Complaint's third defense alleges that the claim against Mr. Constantino was a post-petition debt. Initially, it should be noted that the Constantino petition did list the underlying obligations to Norwest and North Star. Flanders Hill was not listed as a creditor.

Section 101(9) defines "creditor" as an entity with a claim against the Debtor that arose at the time of or before the Order for Relief concerning the Debtor.

The term "claim" is defined in § 101(4), which states:

(4) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

In other words, even if the right to payment or an equitable remedy is disputed, unmatured, unliquidated or contingent, it is still a claim within the meaning of § 101(4). Moreover, the legislative history of § 101(4) demonstrates that Congress intended the broadest possible definition of "claim" so that all legal obligations of the Debtor, no matter how remote or contingent, could be dealt with in the bankruptcy case. *In re Johns–Manville Corp.*, 57 B.R. 680, 687 (Bankr.S.D.N.Y.1986).

As stated in *Johns–Manville*, "Congress plainly did not intend the mere post-petition service of a summons and complaint giving rise to a defendant's right to implead a debtor on a contribution or indemnification theory to render that third-party claim outside the scope of § 362(a)." 57 B.R. at 687. Further, as noted in *In re Yanks*, 49 B.R. 56, 58 (Bankr.S.D.Fla.1985):

... To permit a claim to be discharged when creditors file a suit against a third party before a petition is filed and to prevent a claim from being discharged if those same creditors filed the same suit against the same third party after a petition is filed is simply inequitable.

In the case at bar, the actions which give rise to the third-party complaint all took place before the filing of the petition. Even if the Court were to accept *arguendo*, all the allegations of Flanders Hill's complaint, that Flanders Hill gave Mr. Constantino payment in full for his plumbing work and that he did not pay his suppliers, there would be no other conclusion that the Court could reach. The claim of Flanders Hill was a pre-petition debt.

■ Flanders Hill's second defense is based on the fact that they were not scheduled as a creditor by the Constantinos. Flanders Hill maintains that because the debt was not discharged, they were not prevented from instituting their state court action by the § 524(a) injunction.

In the present case, there was a six and a half month gap between the time Mr. Sheperak learned of the bankruptcy filing and his filing of the Third–Party Complaint against Mr. Constantino. As previously noted, he should have known that either the automatic stay was in effect under § 362(a) or the § 524(a) injunction was in operation. Even if Mr. Sheperak thought the debt was under the § 523(a)(3) exception to discharge, the burden of proof was on Flanders Hill to establish that the debt was not discharged. The exception cannot be assumed. As the United States Supreme Court has stated, "The Debtor is discharged, subject to an exception, and one who would bring himself within the exception must offer evidence to do so." *Hill v. Smith*, 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419 (1923). 3 *Collier on Bankruptcy* § 523.13[6] at 523–85 (15th Ed.1987).

This burden is more difficult than it might appear. The § 523(a)(3) exception

provides that a *debt* must be scheduled if it is to be discharged. The name of the creditor to whom such debt is owed must be scheduled "if known to the debtor". Also, the § 524(a) injunction operates as an injunction against the commencement or continuation of an action to collect, recover or offset any such *debt* as a personal liability. The underlying debts, to Norwest and North Star, were listed and discharged.

Accordingly, the creditor having the burden of proof, and the bankruptcy case still being open at the time Flanders Hill wanted to file their Third–Party Complaint, the proper course would have been to bring the matter before the Bankruptcy Court for determination.

Further, if the Court were to find this to be a no asset case, and that the other criteria outlined in *In re Rosinski* had been met, the Debtors could have amended their schedules to include the omitted creditor. *See, In re Rosinski,* 759 F.2d 539 (6th Cir.1985). This holding also would appear to imply continuing jurisdiction by the Bankruptcy Court over unscheduled debts.

Finally, the Court cannot condone creditors with contingent claims "waiting in the wings" to avoid having their debts scheduled, and thereby escaping the discharge under § 523(a)(3). A creditor who has acquired actual knowledge of the bankruptcy before the discharge must come forward.

■ The Debtors have asked for attorney's fees, costs, and punitive damages from Flanders Hill for violation of either the automatic stay or the § 524 injunction. The Court, having examined the equities in this action, is inclined to allow both parties to bear their own costs. The Debtors could have prevented this litigation by simply listing Flanders Hill. Mr. Constantino was a plumbing contractor, sophisticated in the ways and workings of mechanic's liens. He should have anticipated that his suppliers would proceed against Flanders Hill.

The Court recognizes the importance of the assessment of attorney's fees and legal cost to deter violations of both the automatic stay and the injunction which goes into effect upon the debtor's discharge. However, the Court is also reluctant to perpetuate the myth that the Bankruptcy Court is the "Lost Dutchman's Mine" for attorney's fees. Flanders Hill's total liability on the liens filed by Norwest and North Star was Four Hundred and Fifty-two Dollars ($452.00), plus One Hundred and Fifty Dollars ($150.00) court costs. In contrast, Flanders Hill sought damages in this adversary proceeding totalling Eight Thousand One Hundred and Forty-four Dollars ($8,144.00). The Debtors have asked for over Two Thousand Dollars ($2,000.00) in attorney's fees alone. However, as previously noted, neither party comes before the Court with particularly clean hands, and therefore the Court will allow each party to bear it's own costs.

Accordingly, it is

ORDERED that the Defendant's state court Third–Party Complaint be Dismissed within ten (10) days from the date of this Order.

It is FURTHER ORDERED that Flanders Hill's Counter–Claim be, and is hereby, DENIED.

It is FURTHER ORDERED that the parties pay their own costs and attorney's fees.