In re Eric Joseph WEISS and Toni L. Weiss, a/k/a Toni L. Yann, Debtors.

Bankruptcy No. 88–20611.

United States Bankruptcy Court, S.D. West Virginia.

Nov. 1, 1989.

John F. Wiley, Morgantown, W.Va., for debtors.

John A. Rollins, Lewis, Ciccarello & Friedbert, Charleston, W.Va., for First Nat. Bank of Morgantown.

## MEMORANDUM ORDER FINDING STAY VIOLATION WILLFUL AND INSTRUCTING PARTIES

RONALD G. PEARSON, Bankruptcy Judge.

The parties are before the Court on the motion of Eric Joseph Weiss and Toni L. Weiss [Debtors] for sanctions against First National Bank of Morgantown, West Virginia [the Bank] and on the Bank's motion for stay relief. The Debtors do not object to the Bank's motion to lift stay to sell a 1987 Toyota Camry.

The Debtors filed a Chapter 7 bankruptcy petition on July 15, 1988. On July 7, 1988, they had, according to their testimony, examined the petition and related papers prepared by their attorney, signed an affidavit concerning the truthfulness of information contained in the papers, and placed the papers in the mail to their attorney for filing. Both parties agree that the following day, July 8, 1988, Mrs. Weiss told Don Lilly, a collection officer of the Bank, that she and her husband had filed bankruptcy. Mrs. Weiss was delinquent in her car loan payments to the Bank.

The day of Mrs. Weiss' call informing Mr. Lilly of a bankruptcy filing, Mr. Lilly, according to his testimony, called the Bankruptcy Court for the Northern District of West Virginia, found that the Weisses' petition had not yet been filed, and then caused to be issued to Mr. and Mrs. Weiss a notice of default and a notice of right to cure the purchase money loan from the Bank to Toni Weiss, a loan secured by the 1987 Toyota Camry. On the night of July 20 or the early morning hours of July 21, 1988, the Toyota, along with personal belongs in the car, was repossessed at the request of the Bank. Mr. and Mrs. Weiss claim that Mr. Lilly knew they intended to keep the car after their bankruptcy filing. Mr. Lilly disputes the claim that he was informed of their desire to retain the car.

Mrs. Weiss and her husband had recently moved to Reston, Virginia, where Mr. Weiss had successfully sought new employment. Mr. Lilly testified that he obtained the name of a company to repossess and store the car, Auto Recovery Bureau, from a trade reference book. Mrs. Weiss testified that when she went to where the car was stored by the Bank, a distance of more than twenty miles from her home, that she was not permitted to see the car or get personal property from the car until she signed a form releasing any claim she might have against the company holding the car. She testified that when she was permitted to go to the car, it was dirty both outside and inside, with cigarette butts and food scattered inside the car. She described the car as being "trashed." She testified that several items she had left in the car prior to repossession were missing when she saw the car after repossession, and that the items were never recovered. She also testified that at the time she went into the office of the Auto Recovery Bureau, the man in charge of the office had a pistol on the table in front of him and that he "played" with the pistol while he talked to her.

Mr. Weiss testified that he had stayed in the car with the couple's children outside the Auto Recovery Bureau office while Mrs. Weiss entered the office to arrange recovery of their possessions. He said that when he learned that his wife had signed a release without first seeing the car or learning what was in the car, he left her with the children, went inside and asked for a copy of the release. He said the man in charge could give him only a blank release, on which was filled in the description of the car. The business had no photocopy machine. The release stated as follows:

### RELEASE FOR PERSONAL PROPERTY

For the consideration of the delivery to me by Auto Recovery Bureau for all personal property from one *1987 Toyota Camry burgundy in color* Serial Number ___ the receipt of which is hereby acknowledged, I do hereby release and

discharge the said Bureau and/or its agents of and from all claims, demands, and actions whatsoever in law or in equity which I or my representative shall or may have against said Bureau by reason of any matter, cause or thing whatsoever prior to the date hereof.

From testimony in Court, it is apparent that Mr. and Mrs. Weiss were uncertain as to what constitutes a filing of a bankruptcy petition.

The testimony of Don Lilly, who obviously handles many collection matters for First National Bank of Morgantown, was more precise. He testified that he was notified on July 8th by Mr. Weiss that the petitioners had filed bankruptcy. He called the Bankruptcy Court in Wheeling and confirmed on that day that there was no filing, whereafter he proceeded to issue notice of default and notice of right to cure. Notice of Default, Respondant's Exhibit 1, was issued on July 8, 1988, received by the Weisses in Reston, Virginia on July 14, 1988, and returned to Mr. Lilly on July 16, 1988.

Further, according to the testimony of Mr. Lilly, he made arrangements on July 18 to have the car in question picked up by an agency specializing in repossessory work in the Reston area. There was no evidence of any later attempt to verify the filing, other than the call to the Wheeling, West Virginia Court on July 8. Apparently, pursuant to Mr. Lilly's directions issued July 18, the repossession occurred on July 20 or 21. As is reflected in the main case file, the Court takes judicial notice of the filing of a petition in bankruptcy under the provisions of Chapter 7 executed by Mr. and Mrs. Weiss on July 7, 1988 and filed with the Clerk of the Northern District on July 15, 1988. Notice was issued to creditors listed on the matrix in that case and First National Bank of Morgantown was one such creditor. However, according to the testimony of Mr. Lilly, the Bank received notice of the filing on August 1, 1988 by mail.

The Court concludes, from having considered the testimony in this case, that the prompt action of the Bank officer, Don

Lilly, in contacting the Bankruptcy Court Clerk's Office in the Northern District of West Virginia on July 8, 1988 to determine if a Chapter 7 petition had been filed, and the fast repossession action on notice to cure issued the same day, is evidence that the Bank began a race to beat the clock. Receiving an answer in the negative as to filing on July 8, Mr. Lilly, on behalf of the Bank, put in motion the actions which give rise to the current request for sanctions without ever once again bothering to check with the office of the Clerk to see whether an intervening bankruptcy petition had in fact been filed. The Court observed that Don Lilly is a sophisticated collection officer who knows the difference between signing petitions and mailing a petition to the Court, whereas Mr. and Mrs. Weiss have limited experience with respect to initiating a bankruptcy filing and do not know the importance of a filing with the Clerk versus a signing and submission to their attorney.

Further, the Court finds that through the testimony in this case and through the prompt repossession and storage of the vehicle, which was carried out with considerable indiscretion, it is clear that the Bank proceeded in this foreclosure action without reasonable and responsible efforts to confirm the filing which had been reported to them by July 8, 1988, and that such conduct is evidence sufficient to convince this Court that the violation of the stay that occurred was in fact willful by the Bank.

Once a Chapter 7 case is filed, in accordance with § 521(2) of the Bankruptcy Code, debtors are required within 30 days of filing to indicate their intentions with respect to consumer property which secures creditors and have an obligation to take action with respect to those stated intentions within a period of 45 days after filing the notice of intent. In spite of the fact that the respondent Bank would be protected by these provisions of the Code, the Bank's collection officer proceeded in an effort that the Court finds was an effort to shoot the gap between the execution of the petition documents and the effective filing with the Clerk by the Debtors, and accordingly may not now avail themselves of the de- fense that they had no knowledge of the filing or that the violation was not intentional. We find from the circumstances present in this case that the Bank made no reasonable efforts to confirm the filing and should not be protected by the sequence of events, including mailed notice of filing which was not received by them until August 1, 1988.

■ The Court will consider the failure of the petitioners' counsel to provide independent and separate notice to the Bank of the bankruptcy filing as grounds for mitigation of damages to be awarded rather than as an absolute defense to the sanctions requested (as Bank's counsel will probably argue).

Since the parties had informed the Court that the only matter in dispute was whether the stay violation was willful, counsel for the movant is directed to submit order for damages on which the parties may agree, or a request for further hearing on the issue of damages. IT IS SO ORDERED.