In re Haywood M. CLAYTON, Debtor.

Haywood M. Clayton, Plaintiff,

v.

Malvern F. King, Jr., Individually; Pulley, Watson, King & Lischer, P.A.; Charles F. Carpenter, Individually; and Charles F. Carpenter, P.A., Defendants.

Bankruptcy No. B–97–10002C–7D.
Adversary No. 97–2033.

United States Bankruptcy Court,
M.D. North Carolina,
Durham Division.

Feb. 25, 1998.

*MEMORANDUM OPINION*

WILLIAM L. STOCKS, Chief Judge.

This adversary proceeding is before the court on a complaint filed by plaintiff Haywood M. Clayton ("Mr. Clayton") on August 18, 1997, against the defendants Mal-

vern F. King, Jr. ("Mr. King"), the law firm of Pulley, Watson, King & Lischer ("Pulley Watson"), Charles F. Carpenter and Charles F. Carpenter, P.A. ("Mr. Carpenter") for alleged violations of the automatic stay under 11 U.S.C. § 362.[1] The trial of this matter was held in Durham, North Carolina, on January 14, 1998. The plaintiff appeared *pro se.* Malvern F. King appeared on his own behalf and on behalf of Pulley Watson. Charles F. Carpenter appeared on his own behalf and on behalf of Charles F. Carpenter, P.A.

## JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G) which this court may hear and determine. *Budget Serv. Co. v. Better Homes of Va., Inc.,* 804 F.2d 289, 292 (4th Cir.1986); *Foreston Coal Int'l. Inc. v. Red Ash Coal & Coke Corp. (In re Red Ash Coal & Coke Corp.),* 83 B.R. 399, 400 (W.D.Va.1988).

■ Because a proceeding to prosecute a violation of the automatic stay is equitable in nature, a party prosecuting such a proceeding does not have a Seventh Amendment right to trial by jury. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *In re Harrison,* 185 B.R. 607, 610 (Bankr.D.Kan.1995); *Crispell v. Landmark Bank (In re Crispell),* 73 B.R. 375, 378 (Bankr.E.D.Mo.1987); 1 Collier on Bankruptcy ¶ 3.08[1][a] (15th ed. rev.1997). The court therefore denies the plaintiff's request for a jury trial.

---

1. The complaint as it was originally filed contained five additional counts, including claims for alleged fraud, breach of contract, professional negligence, breach of fiduciary duties and negligence. These claims were dismissed by an order entered November 17, 1997, on the grounds that they were based on state law causes of action under North Carolina law and that as such, this court should abstain from hearing those matters in the interests of justice and comity with the courts of North Carolina.

Having fully considered the exhibits introduced into evidence at trial, the testimony and demeanor of the witnesses at trial, the applicable law, and the arguments of counsel, the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 are as follows.

## FINDINGS OF FACT

The court finds that the following chronology of events occurred regarding the parties to this adversary proceeding:

October 1994 through May 1995:

Pulley Watson represents Mr. Clayton in Chapter 13 case no. B94–11575 which was dismissed on May 30, 1995.

December 8, 1995:

Mr. Clayton files a new Chapter 13 case (B95–13485) but does not list Pulley Watson as a creditor.

January 2, 1996:

Mr. King's secretary calls Chapter 13 Trustee's office and learns that Mr. Clayton has filed a new Chapter 13 case.

January 17, 1996:

Mr. King's secretary places a second call to the Chapter 13 Trustee's office regarding Mr. Clayton.

February 13, 1996:

Mr. King sends a letter to Mr. Clayton at the suggestion of Mr. Clayton's lawyer. Letter indicates that Mr. King is aware of the current bankruptcy case and offers to settle by forgoing remaining fees if the balance approved by the court is paid in full. Mr. Clayton does not respond.

March 1996 (sometime therein):

Mr. King conveys his collection files to Mr. Carpenter and advises him that Mr. Clayton may have a current bankruptcy case pending.

April 16, 1996:

A paralegal in Mr. Carpenter's office calls the Chapter 13 Trustee's office to verify whether Mr. Clayton has a pending case.

April 17, 1996:

The paralegal calls the Clerk of Bankruptcy Court and accesses "Voice Case" system to verify whether Mr. Clayton has a pending case.

April 18, 1996:

Mr. Carpenter sends a letter to Mr. Clayton indicating that a collection suit will be filed against him if the account with Pulley Watson is not paid. Mr. Clayton does not respond.

May 17, 1996:

Mr. Carpenter files suit against Mr. and Mrs. Clayton in the District Court of Durham County on behalf of the Pulley Watson law firm; case no. 96–CVD–01963.

August 12, 1996:

Mr. Clayton files a motion for extension of time to file an answer in the state court action. Mr. Clayton does not communicate to Mr. Carpenter, Mr. King or the District Court of Durham County that he is currently in Chapter 13.

September 11, 1996:

Mr. Clayton files an answer. Under the caption "Second Defense: Jurisdiction" Mr. Clayton alleges that "Pursuant to an order of the U.S. Bankruptcy Court of the Middle District of North Carolina in a case captioned B–95 13485 CH13, this Court lacks jurisdiction in this action." The case number provided in this allegation is the proper case number for Mr. Clayton's active Chapter 13 case. The answer also asserts a counterclaim seeking monetary damages.

October 14, 1996:

Mr. Carpenter files a reply in the state court action on behalf of the Pulley Watson law firm. The reply seeks the dismissal of the counterclaim asserted in Mr. Clayton's answer and a motion for the imposition of sanctions for frivolous pleading. The reply does not address

the allegation regarding lack of jurisdiction defense as presented in the answer.

November 15, 1996:

Mr. Clayton is served with a notice of a hearing scheduled for January 3, 1997 in the state court to consider the Carpenter/King motion to dismiss Mr. Clayton's counterclaim and the motion for imposition of Rule 11 sanctions.

November 20, 1996:

Mr. Carpenter and Mr. King are served by Mr. Clayton with a subpoena to appear in the Bankruptcy Court for a hearing scheduled for November 26, 1996.

November 26, 1996:

A hearing is held in the Bankruptcy Court before Judge Wolfe on the Chapter 13 Trustee's motion to dismiss Mr. Clayton's Chapter 13 case. Judge Wolfe finds that due to the existence of an automatic dismissal provision in the confirmation order, the case had been dismissed as of October 22, 1996 without the need for an additional hearing.

January 2, 1997:

Mr. Clayton filed the Chapter 7 case which is now pending before this court.

August 18, 1997:

This adversary proceeding was filed by Mr. Clayton.

## CONCLUSIONS OF LAW

 Section 362(a) of the Bankruptcy Code comes into effect upon the filing of a petition in bankruptcy and prohibits, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title," as well as "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." § 362(a)(1) and (6). In enacting § 362, Congress expressly recognized that the protection afforded by the automatic stay is an essential element of the bankruptcy process.

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95–595, at 340–342 (1977); S.Rep. No. 95–989, at 54–55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840, 6296–97. The automatic stay goes into effect at the time the petition is filed, not when the creditor learns of the filing. *Brockington v. Citizens and S. Nat'l Bank of S.C. (In re Brockington)*, 129 B.R. 68, 70 (Bankr.D.S.C.1991). The consequences of violating the automatic stay are set forth in § 362(h), which provides that:

[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Imposing sanctions under § 362(h) for a violation of the automatic stay requires a showing that 1) the actions taken are in violation of the automatic stay; 2) the violation was willful; and 3) the debtor was injured as a result of the violation. *Hamrick v. United States (In re Hamrick)*, 175 B.R. 890, 893 (W.D.N.C.1994); *Foreston Coal Int'l, Inc. v. Red Ash Coal & Coke Corp. (In re Red Ash Coal & Coke Corp.)*, 83 B.R. 399, 403 (W.D.Va.1988). In a motion for imposition of sanctions under § 362(h), the debtor bears the burden of proof by the preponderance of the evidence.[2] *Elder–Beerman Stores, Corp. v.*

---

**2.** There is some difference of opinion among the courts regarding the proper standard of evidence to be used in an action to impose sanctions under § 362(h). A minority of

*Thomasville Furniture Indus., Inc. (In re Elder–Beerman Stores, Corp.)*, 206 B.R. 142, 155 (Bankr.S.D.Ohio 1997); *In re Dunn*, 202 B.R. 530 (Bankr.D.N.H.1996); *Estep v. Fifth Third Bank of N.W. Ohio (In re Estep)*, 173 B.R. 126, 129 (Bankr. N.D.Ohio 1994).

▬ The defendants do not contest the fact that the actions complained of by the plaintiff are prohibited by the provisions of § 362(a). Defendants believe, however, that they should not be held liable for these actions because they were not willful. To prove a willful violation of the stay, it is not necessary to show that the creditor had the specific intent to violate the stay. *In re Atl. Bus. and Community Corp.*, 901 F.2d 325, 329 (3rd Cir.1990); *In re Sharon*, 200 B.R. 181, 200 (Bankr. S.D.Ohio 1996). It is sufficient to show that the party knew of the existence of the bankruptcy case and that the creditor's actions were intentional. *Id.* A violation of the automatic stay is willful when "[t]here is ample evidence in the record to support the conclusion that [the creditor] knew of the pending petition and intentionally attempted to [continue collection procedures] in spite of it." *Hamrick*, 175 B.R. at 892 (quoting *Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292–293 (4th Cir.1986)); *Mitchell Construction Co., Inc. v. Smith (In re Smith)*, 180 B.R. 311, 319 (Bankr.N.D.Ga.1995). In contrast, a technical violation occurs when a creditor violates the provisions of § 362(a) without knowledge that an active bankruptcy case is pending. *In re Esposito, II*, 154 B.R. 1011, 1014 (Bankr.N.D.Ga.1993) (a willful violation of the stay, as distinguished from a technical violation, occurs when the creditor violates the stay in full knowledge of

the bankruptcy); *In re Haan*, 93 B.R. 439, 441 (Bankr.W.D.N.C.1988) (a willful violation of the stay requires knowledge of the existence of a bankruptcy). A technical violation of the automatic stay does not warrant sanctions under § 362(h). *Red Ash Coal*, 83 B.R. at 403 (where the creditor's technical violation of the stay was inadvertent, the bankruptcy court's imposition of sanctions was clearly erroneous); *Bray Enterprises, Inc. v. First Vermont Bank and Trust Co. (In re Bray Enterprises, Inc.)*, 38 B.R. 75, 79 (Bankr.D.Vt. 1984) (sanctions are inappropriate where only a technical violation of the stay has occurred).

▬ The complaint identifies four separate acts by the defendants which allegedly violate the automatic stay. The first is the February 13, 1996 letter sent to plaintiff by Mr. King and Pulley Watson extending an invitation to settle their claim by payment of the fees previously authorized by the bankruptcy court in full satisfaction of the debt. The court finds that Pulley Watson's contact with the plaintiff in this manner was not in violation of the automatic stay because the communication was made at the suggestion of plaintiff's own counsel. The automatic stay was not designed to be used as a kind of spring-loaded gun against creditors who wander into traps baited by the debtor. *See, e.g., Shriver v. Tingley (In re Shriver)*, 46 B.R. 626, 629, 630–631 (Bankr.N.D.Ohio 1985) (holding that the debtor cannot tell creditors they may repossess the collateral "if they want to" and then file for sanctions when they do). The contents of the letter indicate that plaintiff's then attorney, Mr. Nguyen, had encouraged Mr. King to con-

courts have held that the proper standard is one of clear and convincing evidence. *See, e.g., Diviney v. NationsBank of Texas (In re Diviney)*, 211 B.R. 951, 961 (Bankr.N.D.Okla. 1997); *Brockington v. Citizens and S. Nat'l Bank of S.C. (In re Brockington)*, 129 B.R. 68, 70 (Bankr.D.S.C.1991). However, the majority of courts rely on the Supreme Court's language in *Grogan v. Garner* for the position that the preponderance of the evidence stan-

dard is more appropriate in this context. "Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.'" *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

tact the plaintiff directly regarding an offer of settlement on the claim. Plaintiff has not denied that this was indeed the case. The court therefore finds that Pulley Watson did not violate the automatic stay by following the suggestion of plaintiff's counsel in mailing the February 13, 1996 letter.

The second act complained of by the plaintiff is the filing of the state court action by Mr. Carpenter on behalf of Pulley Watson for collection of the law firm's pre-petition attorney's fees. The defendants have advanced two separate factual considerations that potentially militate against finding that this action constituted a willful violation. The first is that plaintiff failed to list Pulley Watson as a creditor on the schedules attached to the Chapter 13 petition, and as a result, the law firm never received formal notification from the Clerk of Court's office regarding plaintiff's petition in Chapter 13. This argument is not persuasive. Knowledge of the existence of an active bankruptcy case need not be communicated through formal notification of the filing of a petition. *In re Bragg*, 56 B.R. 46, 49 (Bankr.M.D.Ala. 1985). Even where a creditor is not listed as such in the schedules to the petition, the creditor may be charged with notice of the bankruptcy if it were in possession of sufficient facts to cause a reasonably prudent person to make further inquiry. *Bragg*, 56 B.R. at 49; *Constantino v. Flanders Hill Dev. (In re Constantino)*, 80 B.R. 865, 868 (Bankr.N.D.Ohio 1987). Where a creditor is in possession of such facts, willful blindness may be deemed to be the equivalent of notice. *Constantino*, 80 B.R. at 868. It is therefore incumbent upon the creditor to verify the status of a case prior to commencing an action in violation of the automatic stay when facts indicate that the existence of a case may be likely. *Id.* There are two separate incidents which occurred in January and February 1996 either of which would have caused a reasonably prudent person to engage in additional inquiry before pursuing further collection efforts. The first incident was the telephone call placed to the Chapter 13 Trustee's office by Mr. King's secretary on January 2, 1996, and then again on January 17, 1996. The comments in the law firm's billing statement regarding these phone calls clearly suggest that the firm had been informed of "Clayton's new filing" as early as January 2, 1996. In addition to the secretary's calls to the Trustee's office, the contents of the February 13, 1996, letter state quite plainly that Mr. King had received confirmation of plaintiff's new bankruptcy filing from Mr. Nguyen sometime in early February 1996. Even without formal notice form the clerk's office, Pulley Watson was aware that plaintiff had a new Chapter 13 case pending as late as February 1996. This is further demonstrated by the fact that Mr. King made a point of mentioning to Mr. Carpenter the possibility that plaintiff had a bankruptcy case pending when he transferred the firm's collection accounts to Mr. Carpenter in March 1996. Once the defendants were placed on notice, the burden remained with them to continue monitoring the status of plaintiff's bankruptcy if they were going to proceed with any collection action over the course of the following months.

The second factual consideration that defendants point to as evidence of their lack of willfulness in filing the state court action is the attempt by Mr. Carpenter to verify the status of plaintiff's Chapter 13 case before filing the complaint on behalf of Pulley Watson. Defendants argue that the attempt to verify the status of the case satisfactorily fulfilled whatever burden they may have had and that they should not be faulted for relying on erroneous information which they contend was provided by both of the sources that were checked.

This argument is not accepted either, primarily because the defendants failed to establish that the inquiries with the clerk of court and the Chapter 13 Trustee's office were performed properly. The evi-

dence shows that Mr. Carpenter delegated the task of verifying the status of the plaintiff's Chapter 13 case to a paralegal in his office. It was the testimony of the paralegal that she contacted the office of the Chapter 13 Trustee by telephone on April 16, 1996, and spoke with an unidentified person who told her that Mr. Clayton had no current Chapter 13 case pending. The paralegal further testified that on April 17, 1996, she placed a call into the "Voice Case" computerized system at the bankruptcy clerk of court's office and again was informed that Mr. Clayton had no current Chapter 13 case pending.

■ Some of the cases which have addressed the issue have indicated that telephonic communication with the bankruptcy court is an acceptable means of verifying current case status. *See, Bragg,* 56 B.R. at 49 (court admonishes bank's counsel for not contacting the clerk's office the day of a repossession to verify case status); *Shriver,* 46 B.R. at 628 (creditor held not liable for violation of the stay where attorney had his secretary contact the bankruptcy court clerk's office but was given misinformation regarding petition filing); *Carter v. VanBuskirk (In re Carter),* 16 B.R. 481, 483 (W.D.Mo.1981) ("If appellant had any doubts regarding the representations of plaintiff's counsel, it was incumbent upon appellant to contact the bankruptcy court, rather than do nothing, knowing that his client was about to evict plaintiff.") *But see, Mitchell Constr. Co., Inc. v. Smith (In re Smith),* 180 B.R. 311, 315–316 (Bankr. N.D.Ga.1995) ("[W]hile it is possible to obtain information over the telephone from personnel in the Clerk's office of the Bankruptcy Court, it is not relied upon by attorneys familiar with bankruptcy law and practice. The reliance an attorney must place on such information is similar to that required in a title search of real estate records.") In this case, the decision to accept and rely upon information obtained by telephone from the "Voice Case" system was not unreasonable. The court takes judicial notice of the fact that the clerk of bankruptcy court has this system in place to function in just such a capacity. However, even though it may be accepted practice to verify case status through use of the "Voice Case" system, persons who do so and later contend that they were furnished incomplete or erroneous information have the burden of showing that they exercised due diligence and reasonable care in accessing and using this form of telephonic inquiry. In the present case, defendants failed to make such a showing.

The notes and memorandum drafted by the paralegal contemporaneously with her telephone calls, along with her testimony regarding the manner in which her inquiries were made, cast considerable doubt on whether the paralegal performed her investigation properly. In particular, her handwritten notes suggest that her inquiries were directed at the plaintiff's spouse, Sylvia Clayton, rather than the plaintiff, Haywood Clayton. Such an error might explain why both the "Voice Case" system and the Chapter 13 Trustee's office provided the paralegal with a negative response despite the fact that Mr. Clayton's case had been pending in the Middle District for almost four months at the time of the calls. Since the defendants were on notice that Mr. Clayton had a Chapter 13 case pending in January of 1996 and failed to show that a reasonable inquiry was made to determine whether the case was still pending, knowledge of the pending case is imputed to the defendants at the time the collection action was filed against the plaintiff in state court. *See Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.),* 112 B.R. 526 (S.D.N.Y.1990) (error by computer programmer resulted in production of notices to the debtor in willful violation of the automatic stay), *rev'd on other grounds,* 920 F.2d 183 (2nd Cir.1990); *In re Withrow,* 93 B.R. 436, 438 (Bankr.W.D.N.C. 1988) (constructive notice was imputed to a creditor where the failure to receive actual notice was due primarily to creditor's distant and complex collection system); *In re Shealy,* 90 B.R. 176, 179 (Bankr.W.D.N.C.

1988) (tax commission's failure to locate and flag the debtor's tax claim resulted in numerous notices being sent to Debtors in willful violation of the automatic stay). Constructive notice of the plaintiff's case is imputed to King and Pulley Watson by virtue of their status as the principals of Mr. Carpenter. *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 689 n. 1 (2d Cir.1983) ("It is a basic tenet of the law of agency that the knowledge of an agent, or for that matter a partner or joint venturer, is imputed to the principal."); *In re Withrow*, 93 B.R. at 438 (knowledge may be imputed to the creditor by notice to its apparent agents). Hence, the defendants are found to be in willful violation of the automatic stay as a result of the filing of the collection action against the plaintiff in the District Court of Durham County on May 17, 1996.

■ The third and fourth acts complained of by the plaintiff involve the defendants' motion for Rule 11 sanctions filed with the defendants' reply in the state court collection suit. Specifically, the plaintiff alleges that filing the motion constituted the defendants' third violation of the stay and scheduling the motion for hearing constituted the defendants' fourth violation of the stay. The court finds that these actions by the defendants also constitute willful violations of the automatic stay. The defendants received notice of plaintiff's Chapter 13 case again when they were served with a copy of plaintiff's answer on September 11, 1996. The second paragraph of plaintiff's answer states that "pursuant to an order of the U.S. Bankruptcy Court of the Middle District of North Carolina in a case captioned B–95 13485 CH 13, this Court lacks jurisdiction in this action." Although the particular language employed in this sentence is not a model of clarity, it was sufficient to provide notice of the pendency of the case to Mr. Carpenter, an attorney with experience in bankruptcy cases or, at least, to prompt a further inquiry by Mr. Carpenter. The case number provided by the plaintiff in this pleading is the correct case number for the pending Chapter 13 case. At trial, Mr. Carpenter admitted that he recognized the number as a case number in bankruptcy, but assumed that the number was the number for a prior Chapter 13 case and gave the matter no further consideration. In providing effective notice of a bankruptcy filing, the case number is the one factor "uniquely within the knowledge of the debtor" and essential "to provid[ing] actual notice of a pending bankruptcy case." *Mitchell Constr. Co.*, 180 B.R. at 318. Having received a case number, it was incumbent upon counsel to make further inquiry, particularly in light of the fact that he earlier had been told that Mr. Clayton might be in bankruptcy. Accordingly, the filing of the motion for sanctions and the scheduling of subsequent hearings in the Durham County lawsuit also constituted willful violations of the automatic stay.

■ Having determined that willful violations have occurred, § 362(h) provides for the recovery of any actual damages resulting from such a violation. The award of actual damages is mandatory upon a finding of a willful violation of § 362. *Davis v. IRS*, 136 B.R. 414, 423 n. 20 (E.D.Va.1992); *In re Sharon*, 200 B.R. at 200. However, the burden is on the debtor to demonstrate the extent of any damages. *Official Unsecured Creditors' Comm. of Gen. Homes Corp. v. American Sav. and Loan Ass'n of Fla. (In re Gen. Homes Corp. and FGMC, Inc.)*, 181 B.R. 870 (Bankr.S.D.Tex.1994) (quoting *In re Alberto*, 119 B.R. 985 (Bankr.N.D.Ill.1990)) "the court cannot award damages, costs or fines where none have been proven, even if both Rule 9011 and 11 U.S.C. 362 have been violated." *Id.* Cf. *In re Withrow*, 93 B.R. at 439 (awarding nominal actual damages of $100 where the debtor offered no evidence of actual damages beyond minor aggravation). In the present case, the plaintiff failed entirely to meet this burden of proof and no evidence of any attorney's

fees[3] or other damages was offered by the plaintiff. Thus, the record is utterly silent regarding any actual damages suffered by the plaintiff as a proximate result of defendants' actions.

 Plaintiff's request for punitive damages in this case also is denied. Under § 362(h) an award of punitive damages is within the discretion of the trial court and proper only in appropriate circumstances. *Davis v. IRS*, 136 B.R. 414, 423 n. 20 (E.D.Va.1992). Appropriate circumstances ordinarily are those in which the creditor has demonstrated egregious, vindictive or intentional misconduct. *McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 168 (9th Cir. BAP 1995); *Lovett v. Honeywell*, 930 F.2d 625, 628 (8th Cir. 1991). For example, in *Budget Service Co. v. Better Homes of Virginia*, the Fourth Circuit upheld the imposition of punitive damages where a creditor resorted to self-help remedies in the post-petition recovery of debtor's leased vehicles. In the process of repossessing the vehicles, the creditor caused some physical injury to one of debtor's employees and on another occasion was found to have been carrying a firearm. 804 F.2d at 291. No form of comparable conduct was exhibited by the defendants in this proceeding. Defendants should have been aware of plaintiff's Chapter 13 filing and have been charged with constructive knowledge of as much, but their behavior appears to have been motivated by unverified assumptions rather than intentional misconduct. Defendants actions reflect a lack of diligence, but not vindictiveness or malice. Under these circumstances, an award of punitive damages is not warranted.

 The fact that punitive damages should not be awarded in this case is even more apparent when viewed in light of the plaintiff's less than exemplary behavior throughout this unfortunate stream of events. As an initial matter, plaintiff failed to list Pulley Watson as a creditor when filing his Chapter 13 petition, even though the plaintiff was fully aware of the existence and status of the law firm as a creditor at that time. Had plaintiff listed Pulley Watson as he was obligated to do, the firm would have received formal notice of the case. Even if plaintiff's initial omission was no more than an inadvertent, clerical oversight, plaintiff had an affirmative duty to promptly amend his bankruptcy schedules upon discovering the omission. *Mitchell Constr. Co. v. Smith (In re Smith)*, 180 B.R. 311, 318, 320 (Bankr. N.D.Ga.1995). During the entire eleven month span between the filing of the petition and the dismissal of the case, Plaintiff never bothered to amend his schedules to include Pulley Watson as a creditor. The failure of a debtor to include a creditor in its schedules obviously does not provide a complete defense to a willful violation of the stay, *In re Holman*, 92 B.R. 764, 770 (Bankr.S.D.Ohio 1988), but it does constitute grounds for mitigation of damages. *In re Weiss*, 108 B.R. 570, 572 (Bankr. S.D.W.Va.1989); *In re Shriver*, 46 B.R. 626, 631 (Bankr.N.D.Ohio 1985).

 Although the Bankruptcy Code does not require a debtor to warn his creditors of existing violations prior to moving for sanctions, the debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with regard to such violations.

---

**3.** There is a split of authority over whether the award of attorney's fees under § 362(h) is an independent matter from the issue of actual damages, *In re Peterkin*, 102 B.R. 50, 54 (Bankr.E.D.N.C.1989), or if the award of attorney's fees is conditional upon a showing of actual injury. *Lovett v. Honeywell*, 930 F.2d 625, 629 (8th Cir.1991); *Loethen Oil Co. v. Hen House Interstate, Inc. (In re Hen House Interstate, Inc.)*, 136 B.R. 220, 223 (Bankr.

E.D.Mo.1992); *In re Haan*, 93 B.R. 439, 441 (Bankr.W.D.N.C.1988) ("Here there is 'no harm—no foul' and no injury—no attorney's fees.") Even if this court were inclined to consider the award of attorney's fees where no actual damages have been shown, the same fatal defect arises. That is, plaintiff also has failed to present any evidence that any legal fees have been incurred.

*Mitchell Constr. Co.*, 180 B.R. at 320; *General Motors Acceptance Corp. v. Miller*, 10 B.R. 74, 76 (Bankr.S.D.Ohio 1981). This duty includes "such cooperation as might reasonably and promptly mitigate [the debtor's] damages." *In re Esposito*, 154 B.R. 1011, 1015 (Bankr.N.D.Ga.1993). When Mr. Carpenter advised plaintiff in his letter of April 18, 1996, that Pulley Watson was contemplating filing a lawsuit unless a payment arrangement could be made, plaintiff made no reply. When Mr. Carpenter filed the lawsuit a month later, plaintiff again made no prompt reply. Three months later, plaintiff filed a motion for extension of time to file an answer but still made no disclosure or communication regarding his pending case or the automatic stay. Four months after the initial lawsuit was filed, plaintiff filed an answer and for the first time mentioned the pendency of his Chapter 13 case, albeit in a somewhat oblique manner. Rather than averting from the state court litigation, the plaintiff included in his answer a counterclaim seeking a recovery in state court against the defendants. The court finds that this conduct on the part of the plaintiff was intentionally dilatory, designed to promote a claim rather than to prevent further violations and mitigate the risk of damages. Such conduct on the part of the plaintiff is an additional mitigating factor with regard to plaintiff's claim that actual and punitive damages should be imposed in this adversary proceeding.

CONCLUSION

Based upon the foregoing findings of fact and conclusions of law, the plaintiff is not entitled to recover any damages, compensatory or punitive, from the defendants and this action should be dismissed with prejudice.

A judgment in accordance with this memorandum opinion will be entered contemporaneously herewith.