**In re John Curtis BROOKS and Jacqueline Ann Brooks, Debtors.**

**John Curtis BROOKS and Jacqueline Ann Brooks, Plaintiffs,**

**v.**

**WORLD OMNI, Defendant.**

**Bankruptcy No. 96–00204. Adv. No. 96–90043.**

United States Bankruptcy Court, N.D. Florida, Gainesville Division.

April 2, 1997.

Sharon Sperling, Gainesville, FL, for Plaintiffs.

Lisa Cohen, Gainesville, FL, for Defendant.

Leigh Hart, Trustee, Tallahassee, FL.

## MEMORANDUM OF OPINION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

This matter is before the Court on plaintiff's Motion For Assessment of Attorneys Fees and Sanctions brought under 11 U.S.C. § 362(h). A hearing was held on February 2, 1997, and upon the evidence presented and argument of counsel, I make the following findings of fact and conclusion of law pursuant to Rule 7052, Fed.R.Bankr.P.

*Findings of Fact*

World Omni repossessed the Brooks' 1991 Dodge Dynasty on June 20, 1996. On June 25, 1996, the Brooks filed a Chapter 13 bankruptcy proceeding and commenced this adversary proceeding seeking turnover of the repossessed vehicle. The same day, their attorney contacted Brian Carr, the World Omni employee assigned to their account, and advised him of the bankruptcy and the adversary proceeding and requested turnover of the vehicle. Brooks' attorney made a verbal offer of adequate protection payments and offered to provide proof of insurance as additional adequate protection. Carr stated that World Omni would immediately assign the case to their bankruptcy department,

which would make arrangements to return the vehicle.

Over the next two days Brooks' attorney initiated several communications with World Omni representatives and its attorneys. On June 28, 1996 at 2:21 p.m., the debtors provided World Omni with a copy of the insurance policy declarations sheet dated January 29, 1996. Although it stated the policy period was from March 19, 1996 through September 19, 1996, it also stated "your policy will expire on 3/19/96, to keep coverage in force please return the attached request."

On that same day at 4:10 p.m., World Omni's attorney contacted the Brooks' attorney and informed her that the vehicle was available for the debtors' retrieval at an impound lot in Ocala, Florida. The lot closed at 4:30 p.m. for the weekend and the debtors were unable to retrieve their vehicle until July 1, 1996. Later that afternoon, World Omni's attorney contacted the debtor's attorney to request current proof of insurance. Debtor's counsel verified that coverage was current by contacting the insurance carrier and then she relayed that information to the creditor's attorney.

The vehicle had been towed to Ocala prepetition, a distance in excess of 40 miles from where the vehicle was repossessed. The Brooks did not want to drive their vehicle because of a concern that the car had been damaged. They arranged to have the vehicle towed back to Gainesville and paid the towing fees of $130.00. The debtors also rented a car from June 25, 1996 through July 12, 1996, at a per diem rate of $46.62.

The debtors contend that § 542(a) obligated World Omni to return their vehicle upon notice of the bankruptcy petition filing. They allege that World Omni acted in willful violation of the automatic stay by delaying the return of their vehicle and by failing to return the vehicle to the locale of repossession. The debtors seek an award of their actual damages, including costs and attorney's fees, and punitive damages, pursuant to § 362(h) of the bankruptcy code.

## Conclusions of Law

■ The filing of a bankruptcy petition imposes automatically a stay upon most actions by creditors to satisfy their claim against the debtor. 11 U.S.C. § 362(a)(3). Section 542 provides that an entity, including a secured creditor, who possesses property of the debtor at the time the debtor files a bankruptcy petition "shall deliver to the trustee, and account, for such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). The debtors contend that World Omni failed to fulfill its responsibility when it made the car available in Ocala and did not return the car to the locale of repossession in a timely fashion.

Section 542 charges the possessor "shall deliver [the property] to the trustee." 11 U.S.C. 542(a). Few cases distinguish between making the collateral available and returning it to the place of repossession. This court holds that the collateral must be returned to the locale of repossession.

In *In re Knaus,* the creditor obtained a judgment and had the sheriff levy on the debtor's grain and equipment. *In re Knaus,* 889 F.2d 773, 774 (8th Cir.1989). Before the Sheriff's sale occurred, the debtor filed bankruptcy and demanded that the creditor return the property according to 11 U.S.C. § 542. *Id.* The creditor refused to comply and the debtor filed an action with the bankruptcy court for the return of the property. *Id.* The court held that § 542 requires turnover of property seized prior to the bankruptcy petition and required that the creditor return the property. *Id.* at 775. The court noted:

[A] person holding property of a debtor who files bankruptcy proceedings becomes obligated, upon discovering the existence of the bankruptcy proceedings, to return that property to the debtor (in chapter 11 or 13 proceedings) or his trustee (in chapter 7 proceedings). Otherwise, if persons who could make no substantial adverse claim to a debtor's property in their possession could, without cost to themselves, compel the debtor or his trustee to bring suit as a prerequisite to returning the property, the powers of a bankruptcy court and its officers to collect the estate for the benefit of creditors would be vastly re-

duced. The general creditors, for whose benefit the return of property is sought, would have needlessly to bear the cost of its return.

*Id.* Just as the unsecured creditors should not shoulder the cost of an action to compel the return of the collateral, they should likewise not be called to pay the cost of transporting the vehicle back to the debtor.

*In re Sharon,* noted the above *Knaus* excerpt and continued:

[T]he courts which adhere to the majority position agree that the duty to cause the postpetition return of property of the estate is not on the debtor, but rather the party who exercises control over the property of the estate. Although a trustee or debtor-in-possession does have the ability to bring a motion to compel turnover under § 542, these courts hold that the case law and legislative history of § 362 indicate that Congress did not intend to place the burden on the bankruptcy estate to absorb the expense of potentially multiple turnover actions.

*In re Sharon,* 200 B.R. 181, 192 (Bankr. S.D.Ohio 1996).

Finally, in *Belcher,* the creditors repossessed the vehicle not knowing that the debtor had filed for bankruptcy. *In re Belcher,* 189 B.R. 16, 17 (Bankr.S.D.Fla.1995). The court held that although the repossession occurred from the debtor's failure to notify the creditor of the bankruptcy filing, the creditor "had a duty to return the vehicle to the place from where it was taken." *Id.* at 19. World Omni exercised control over the vehicle at the time the bankruptcy petition was filed, and it was their responsibility to return the vehicle to the debtors' possession when the debtors' filed bankruptcy. By making the car available in Ocala, the creditors failed to fulfill their responsibility of returning the car to the debtors' possession.

Section 542 requires the turnover of the vehicle but does not specify appropriate time limitations. This gives rise to the issue of once the debtors have filed for bankruptcy protection and have requested turnover of the vehicle, what is a reasonable period of time for the creditors to effect turnover of the vehicle. As Judge Cristol illustrated in his opinion in *Belcher,* "Should [the creditor] have placed the vehicle on its fax machine and faxed it back to the attorney for the debtor?" *Id.* at 18. Of course not, that is too great a demand to place on the creditor. In *Belcher,* the creditors retained possession of the vehicle for nine days after initial demand. *Id.* at 17. Judge Cristol notes that a creditor is entitled to notice and a reasonable time to respond once he receives that notice. *Id.* at 18. He finds that nine days exceeds reasonableness and that four or five days is generally a reasonable time for the creditor to return the vehicle. *Id.* at 19. Here, five days elapsed from the time the creditor was notified until the debtors received the car. Under the facts of this case, I find this response time to be unreasonable. The creditor had consulted with its attorney and knew the statutory requirements by Friday, June 28, 1996. If the creditor had taken the responsibility to return the car to the debtors on that day, it would have fulfilled its responsibility under the bankruptcy code. Further, the creditor's duty to return the vehicle is not dependent on receipt of adequate protection or proof of insurance. Section 542(a) contains no provision requiring adequate protection as a prerequisite to turnover and it requires no preliminary action on the part of the debtor. *In re Sharon,* 200 B.R. at 189. Indeed, the structure of § 361, specifically the introductory clause, supports the conclusion that adequate protection is only available *after* a motion has been filed with the bankruptcy court. *Id.* Here, the lack of proof of current insurance does not mitigate the conclusion that the creditor retained the collateral for an unreasonable period of time.

Section 362(h) of the Bankruptcy Code provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). To award actual damages, the court must find that the creditor willfully acted in violation of the stay. A willful violation of the automatic stay occurs when the creditor acts deliberate-

ly with knowledge of the bankruptcy petition. *Knaus,* 889 F.2d at 775. This court finds that a willful violation occurred—not when the vehicle was originally repossessed—but when, after defendant had knowledge of the bankruptcy, the vehicle was not returned to the debtors' possession where it was repossessed but, instead, was made available for the debtors' retrieval.

 Having found a willful violation of the automatic stay, the Court has no alternative but to award actual damages, including costs and attorneys' fees pursuant to section 362(h). 11 U.S.C. § 362(h); *In re Putnam,* 167 B.R. 737, 741 (Bankr.D.N.H.1994). Thus, the debtors are entitled to recover towing costs of $130.00, and car rental fees for the period of Saturday June 29, 1996 through Monday, July 1, 1996, of $139.86.

Plaintiffs seek attorney's fees for a total of 18.10 hours spent in conjunction with this matter. Of that time, 1.25 hours was spent before the bankruptcy was even filed. This time cannot be considered having been spent due to a violation of the automatic stay since the stay was not in effect when it was spent. Likewise, the 1.3 hours incurred during the two days following the petition will not be assessed since those would have been incurred even if the vehicle had been returned to the plaintiffs on June 28. Those fees were not the result of a willful violation of the stay. The remaining 15.55 hours I find to be assessable against World Omni. That time was incurred as a result of World Omni's delay in returning the vehicle, in litigation of the instant motion and in responding to World Omni's counter motion for Rule 9011 sanctions. Plaintiff's counsel has not specified an hourly rate, therefore I will base the award on an hourly rate of $125.00. Accordingly, plaintiffs shall be awarded attorney's fees in the amount of $1,943.75.

▉ An award of punitive damages under section 362(h) requires a willful violation of the automatic stay and appropriate circumstances. 11 U.S.C. 362(h). A willful violation of the automatic stay has occurred so the court must determine if appropriate circumstances are present.

"Appropriate circumstances" has been interpreted to mean "egregious, intentional misconduct on the violator's part." *In re Knaus,* 889 F.2d at 776. In *Knaus,* the court found that punitive damages were warranted because of the acts of the creditor. *Id.* There the court points to the fact that the creditor attempted to have the debtor excommunicated from his church. *Id.* Thus, the creditor not only willfully failed to fulfill its obligations under the code, it brazenly attempted to punish the debtor for pursuing his rights given by the code. *Id.* There is no such conduct present here. Although the creditor's failure to return the vehicle to Gainesville resulted in a violation of the automatic stay, there was no egregious conduct on the part of the creditor. It did not attempt to punish the debtor for demanding turnover of the vehicle. No punitive damages are awarded and no attorney's fees relating to punitive damages are awarded.

A separate order shall be entered in accordance herewith.