Carthenia DAVIS, Debtor.

Carthenia Davis, Plaintiff,

v.

Gatorwheel, Inc., a Florida corporation, and Iraj Ghahdarijani, Defendants.

Bankruptcy No. 00–00446–GVL1.
Adversary No. 00–90035.

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

June 21, 2001.

**454**

Sharon Sperling, Gainesville, FL, for plaintiff.

Allan H. Kaye, Gainesville, FL, for defendants.

Leigh D. Hart, Tallahassee, FL, trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for trial on the complaint of the Plaintiff, Carthenia Davis, for turnover of property of the estate and for sanctions against defendants for willful violation of the automatic stay provided for by 11 U.S.C. § 362(a). Having considered the parties' Stipulation of Facts, evidence presented at trial, and the arguments of counsel, I make the following findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052.

At trial, the parties entered a written Stipulation as to Facts Not at Issue as to the following facts:

1. Plaintiff filed her Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code on August 29, 2000.

2. Plaintiff purchased a used 1994 Dodge Caravan from Gatorwheel, Inc., (hereafter "Gatorwheel") on December 9, 1999. Plaintiff was in possession of the vehicle as of the date of the filing of the Chapter 13 petition.

3. On August 30, 2000, Gatorwheel repossessed the vehicle.

4. The repossession by Gatorwheel was made without actual knowledge of the pending bankruptcy case.

5. On August 31, 2000, the Plaintiff contacted Plaintiff's attorney's office to report the repossession. The Plaintiff's attorney directed her staff to contact Gatorwheel to inform the defendant of the bankruptcy filing and to request immediate turnover of the vehicle.

6. The Plaintiff's attorney was asked to contact Allan Kaye, Esq., the Defendant's attorney. When Mr. Kaye was contacted by the Plaintiff's attorney's secretary, he indicated that he was unfamiliar with bankruptcy law, and he requested the Plaintiff's attorney provide him with information regarding the effect of the automatic stay.

7. The Plaintiff's attorney spoke with Mr. Kaye on Friday, September 1, 2000, and informed him of the effect of the automatic stay and the creditor's obligation to turn over property of the estate. Defendant's attorney asked for written authority. The Plaintiff's attorney faxed Defendants' attorney copies of this court's opinion in *Brooks v. World Omni*, 207 B.R. 738 (Bankr.N.D.Fla.1997) and of *In re Belcher*, 189 B.R. 16 (Bankr.S.D.Fla.1995).

8. Later on September 1, 2000, Defendants' attorney called the Plaintiff's attorney's office and stated that if

the Plaintiff presented her valid driver's license and proof of insurance to Gatorwheel, Defendant Iraj Ghahdarijani, (hereafter "Ghahdarijani"), who is an officer and or a director of Gatorwheel, would release the vehicle to her.

9. The Plaintiff's attorney called Defendant's attorney in the morning of Tuesday, September 5, 2000, and informed him that the Defendant had refused to release the vehicle as had been agreed. After speaking with the Defendant, Defendants' attorney informed the Plaintiff's attorney that the Defendant Ghahdarijani would not release the vehicle because he claimed he had been unable to transfer title to the Plaintiff due to a suspension of her driver's license. After consulting with the Plaintiff, the Plaintiff's attorney assured Defendant's attorney that the Plaintiff's license had been suspended at one time but that her license had been reinstated and should present no problem.

10. After again contacting Defendant, Defendants' attorney informed the Plaintiff's attorney that the Defendant would require the Plaintiff to accompany him to the Department of Motor Vehicles in order to effectuate transfer of the title before he would release the vehicle.

11. The Plaintiff's attorney contacted Defendants' attorney to ask that Defendant Ghahdarijani contact the Plaintiff to arrange a time to meet at the Department of Motor Vehicles. Defendants' attorney indicated that he would do so, and also indicted that the Plaintiff would be required to pay the fee to transfer the title. After consultation with the Plaintiff, the Plaintiff's attorney informed Defendant's attorney that the transfer fee had been included in the sales price of the vehicle, although the loan was in default at the time of filing.

12. On September 6, 2000, Plaintiff's attorney prepared a Complaint for Turnover, Emergency Motion for Turnover, and Statement of Need for Emergency Hearing, and faxed and mailed the documents to Defendants' attorney.

13. On September 7, 2000, after several telephone calls between the attorneys, Defendants' attorney called to inform the Plaintiff that the vehicle was available for the Plaintiff to pick up at the Gatorwheel lot.

14. Between September 7 and September 24, 2000, Gatorwheel remained in possession of the vehicle. On September 25, 2000, the Plaintiff's attorney filed a hearing request form in order to schedule a hearing on Plaintiff's Motion for Turnover. On September 28, 2000, the Court scheduled a telephone hearing for October 2, 2000, and the Plaintiff's attorney notified Defendants' attorney of the upcoming hearing.

15. On September 29, the Defendant released the vehicle to the Plaintiff.

In addition to the stipulated facts, the Plaintiff testified that on September 1, after being advised by her attorney that she would be able to pick up her van, left her office at 4:00 p.m. and went to the Gatorwheel lot to pick up her van. At that time, she was met by Ardolan Hashmet ("Ard") who was the manager of the business. Ard told her that she didn't have a valid driver's license even though Plaintiff testified that she did in fact have valid driver's license and she showed it to Ard when she attempted to retrieve her van. He further told her that she had to give him $250.

Plaintiff also testified that Ard told her that "she wasn't going to get the vehicle because she had filed bankruptcy and screwed him, and that she could just sue him." She then left the lot.

On September 5, after being advised that she would be required to go to the Department of Motor Vehicles' office with Ard for purposes of transferring the title, Plaintiff arranged to take time off from work on the 6th for that purpose. On the 6th, she went down to the DMV office as previously arranged and found out that Ard had already been there and transferred the title. The following day, September 7, the Plaintiff once again went to the car lot to pick up her van. She obtained the keys from Ard and tried to start the van, however the battery was dead and it would not start. She then called her attorney's office for guidance. She was told by an employee that she should lock the van and leave. As she was attempting to do so, Ghahdarijani approached her and began yelling at her telling her that she could not take the vehicle. He then attempted physically to take the keys away from her. As a result, Plaintiff called the police and Defendant Ghahdarijani was charged with misdemeanor battery.

Once again on September 16th, Plaintiff returned to the lot with her brother-in-law to assist her in retrieving the van. Ghahdarijani was at the lot but Ard was not. Ghahdarijani advised Plaintiff that she would have to wait for Ard to return before she could take the van. Plaintiff and her brother-in-law waited for three hours and Ard did not return to the lot. They left and later called back to the lot to find out when they could pick up the vehicle. They were told that in order to pick up the vehicle they would have to come to the lot with a Sheriff and a court order.

Following the court's scheduling of an October 2 telephone hearing on Plaintiff's Motion for Turnover, on September 29 Plaintiff went to the car lot with an employee from her attorney's office. At that time, Ard removed a battery from another vehicle, put it in Plaintiff's vehicle and the attorney's employee was able to drive the vehicle off the lot.

Plaintiff's testimony went almost completely unrebutted by the Defendant. Ard claimed that he would not release the van initially because Plaintiff had a suspended driver's license and her insurance had been canceled. However, Plaintiff produced a copy of her insurance policy that had been provided to the Defendants. While she acknowledged that her driver's license had at one time been suspended, it was valid at the time she attempted to retrieve her van and she showed it to Ard at that time.

As the result of the Defendants' refusal to return her van, the Plaintiff had to find alternate transportation to and from her place of employment. She was able to get rides with her mother for which she compensated her mother $25 per week for a total of $100. She also paid her sister $15 for giving her rides. In addition to the costs of transportation, Plaintiff lost $64 in wages based on the time she missed from work in attempting to resolve the situation. Finally, she incurred attorney's fees in the amount of $2,062.50 in attempting to obtain the return of the van and in prosecuting this action.

Upon the filing of a bankruptcy petition, an automatic stay arises enjoining most actions by creditors to enforce their claims against the debtor or property of the debtor. 11 U.S.C. § 362(a). Section 362(h) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages". 11 U.S.C. § 362(h).

A creditor who has lawfully repossessed an automobile prior to the filing of a bankruptcy petition is obligated to promptly deliver to the debtor or to the estate the vehicle upon learning of the bankruptcy filing. *In re Brooks*, 207 B.R. 738 (Bankr.N.D.Fla.1997). Here, the Defendant did not lawfully repossess the vehicle prior to the filing of the bankruptcy petition but, instead, repossessed the day after the petition was filed. While the repossession itself constituted a technical violation of the stay, the Defendant not act willfully in violation of the stay since it did so without knowledge of the stay's existence. In *In re Belcher*, 189 B.R. 16 (Bankr.S.D.Fla.1995), the court under circumstances somewhat similar to those in the instant case found that a creditor who retained a vehicle for nine days following notification that it had mistakenly repossessed an automobile post-petition was liable for the payment of debtor's actual damages plus attorney's fees. In this case, the creditor retained possession of the vehicle for 29 days after having been notified of the filing of bankruptcy prior to the repossession. As this court held in *Brooks*, not only must the creditor release the vehicle to the debtor, "the collateral must be returned to the locale of the repossession". 207 B.R. at 739. At no time did the Defendants in this case make any effort to actually return Plaintiff's van to her.

An award of punitive damages under § 362(h) requires not only a willful violation of the automatic stay but there must be also the existence of appropriate circumstances to justify such damages. "Appropriate circumstances" has been interpreted to mean "egregious, intentional misconduct on the violator's part", *In re Knaus*, 889 F.2d 773, 776 (8th Cir.1989). In the instant case, I find that the actions of the Defendants Gatorwheel, Inc. and Iraj Ghahdarijani rise to the level of egregious intentional misconduct. For almost a month, the Plaintiff was denied the use of her vehicle while Defendants had full knowledge of the pendency of her Chapter 13 proceedings and of their obligation to return the vehicle to her. They verbally abused her in her efforts to obtain possession of the vehicle and caused her tremendous time and inconvenience. This misconduct justifies the imposition of punitive damages in this action.

Based on the foregoing, I find that Gatorwheel, Inc. and its owner and President, Iraj Ghahdarijani willfully violated the automatic stay provided by § 362(a) and that appropriate circumstances exist for the imposition of punitive damages pursuant to § 362(h). Accordingly, it is

ORDERED as follows:

1) Gatorwheel, Inc. and Iraj Ghahdarijani technically violated the automatic stay in this case by repossessing the vehicle on August 30, 2000, without actual knowledge of the pending bankruptcy case.

2) Gatorwheel, Inc. and Iraj Ghahdarijani willfully violated the automatic stay by refusing to deliver the vehicle to Plaintiff until September 29, 2000.

3) The actions of the Defendants, Gatorwheel, Inc. were egregious and justify the award of punitive damages pursuant to 11 U.S.C. § 362(h).

4) Judgment shall be entered against Defendants, Gatorwheel, Inc. and Iraj Ghahdarijani for actual damages in the amount of $169.00, attorney's fees in the amount of $2,062.50 and punitive damages in the amount of $4,500.00.

5) A separate final judgment will be entered in accordance herewith.