**In re Victor S. NELSON, Debtor.**

**No. 04–14652.**

United States Bankruptcy Court, D. Kansas.

Nov. 4, 2005.

---

Martin D. Geeding, Wichita, KS, for Houston Properties LLC et al., Creditor.

W. Thomas Gilman, Wichita, KS, for Kimberly Lyn Nelson, Creditor Pro Se.

Thomas J. Lasater, Wichita, KS, for The Cadle Company, II, Inc., Creditor.

Steven M. Leigh, Martin, Leigh & Laws, Kansas City, MO, for GMAC Mortgage, Creditor.

Robin B. Moore, U.S. Attorney's Office, Wichita, KS, for Internal Revenue Service, Creditor.

Joyce Owen, Office of U.S. Trustee, Wichita, KS, for Mary May, U.S. Trustee.

### ORDER ON MOTIONS FOR STAY RELIEF AND STAY VIOLATIONS

ROBERT E. NUGENT, Bankruptcy Judge.

On October 28, 2004, this Court conducted an evidentiary hearing on Motion for Relief from Stay by Creditor, Kimberly Lyn Nelson ("Stay Relief Motion") (Dkt. 16); and Debtor's Emergency Motion for Orders Requiring Creditor Kimberly Nelson, and her Counsel, Patricia Gilman and Ed Nazar as Senior Partner in Redmon [sic] & Nazar, to Appear and Show Cause Why They Should Not be Sanctioned for Knowing and Intentional Violations of the Automatic Stay and Held in Indirect Civil Contempt of this Court, and to Issue Further Orders to Enforce the Automatic Stay ("Emergency Motion") (Dkt. 21).[1] Each party has filed responses to the other's Motion.

---

1. Also conducted on October 28 were hearings on Debtor's Motion for Turnover as well

Both motions present issues concerning the scope and enforcement of the automatic stay concerning domestic relations cases. In resolving these matters, the Court must navigate between and resolve three related but conceptually discreet issues: (1) whether certain actions of Kimberly Nelson and her counsel constitute willful and sanctionable violations of the stay; (2) whether the conduct of a trial commenced before the stay attached and the entry of judgment afterward is void as a violation of the stay; and (3) whether stay relief should be granted to Kimberly to allow her to proceed with and the state court to complete its work on her domestic relations case. It is this Court's task to resolve these issues in a form which is not only just, but readily understandable by the parties and the state courts that must ultimately conclude the divorce proceeding which is the centerpiece of this dispute.

*Factual Background and Findings of Fact*

The debtor Victor S. Nelson ("Victor") and Kimberly Lyn Nelson ("Kimberly")

are husband and wife. Kimberly filed for divorce in Sedgwick County District Court on February 9, 2004 and obtained a Temporary Order.[2] Shortly thereafter, on or about March 26, Kimberly petitioned the state court for a Protection from Abuse ("PFA") Order against Victor.[3] On May 28, 2004 while these two matters were pending, the Kansas Supreme Court indefinitely suspended Victor from the practice of law in state court.[4] The United States District Court for the District of Kansas subsequently invoked reciprocal discipline and on August 5, 2004 suspended Victor from practicing law in federal court, including bankruptcy court where Victor devoted the majority of his law practice.

While the divorce and PFA cases were pending, a mortgage foreclosure action was also commenced in Sedgwick County District Court by GMAC Mortgage Corporation, the holder of the mortgage on Victor and Kimberly's marital home at 111 N. Clifton, Wichita, Kansas.[5] In the foreclosure action, Victor asserted a cross-claim against Kimberly.[6] GMAC obtained summary judgment against Kimberly, but the

---

as the motions of Kimberly Lyn Nelson and the Chapter 13 Trustee to Dismiss the case. These matters are resolved by separate orders. The Court incorporates by reference any findings made in its Order on Dismissal and Conversion.

2. Case No. 04 DM 708.

3. Case No. 04 DM 1767.

4. *In re Nelson*, 277 Kan. 920, 91 P.3d 1146 (2004). The 2004 indefinite suspension resulted from Victor's violation of a 2003 disciplinary order and further disciplinary complaints. On March 7, 2003 Victor was placed on two years' supervised probation by the Kansas Supreme Court. *In re Nelson*, 275 Kan. 377, 64 P.3d 413 (2003). Victor's original discipline resulted from eight complaints that had been filed against him. In the 2003 order, the Kansas Supreme Court concluded that Victor had engaged in a pattern of mis-

conduct, including the failure to provide diligent representation and to adequately communicate with his clients. Several of the complaints involved bankruptcy matters. As a result of additional complaints against Victor while on probation, the Kansas Supreme Court revoked his probation and suspended him indefinitely.

5. *G.M.A.C. Mortgage Corp. v. Victor S. Nelson, Kimberly Lyn Nelson, et al.*, Case No. 04 CV 1108.

6. According to Victor's Emergency Motion, the cross-claim seeks damages from Kimberly for breach of contract or promissory estoppel, contribution and indemnity, fraud, unjust enrichment and quantum meruit, apparently arising from her exclusive occupation of the marital home after she filed for divorce and allegedly defaulting on the mortgage payments.

foreclosure action against Victor was set for trial.

At some point not apparent from the record before the Court, Judge Eric Yost, the presiding judge of the Family Law Department of Sedgwick County District Court, consolidated the divorce case, the PFA case, and the foreclosure case. All three matters were assigned to Senior Judge James Beasley and set for trial at 9:00 a.m. on Monday, August 23, 2004.[7] At all times relevant here, Patricia Gilman of the Redmond & Nazar firm represented Kimberly in all three cases. Victor proceeded *pro se.*

In the weeks leading up to the August 23 trial date, in various communications between or among Victor, Ms. Gilman, Kimberly, and Judge Yost, Victor represented that he would be filing bankruptcy. Because Victor had previously threatened to file bankruptcy without following through, Ms. Gilman did not place much stock in his representations.[8] Judge Yost cautioned in an August 20 e-mail to counsel that Victor's request for a continuance had been ruled upon the prior week, that he was unlikely to change his mind, and that it should not be pursued through "the back door." Judge Yost's e-mail recognized that "a bankruptcy may be filed" but stated his resolve that it would not delay the case.[9] Victor testified that he also told Kimberly on Friday, August 20 that he had no alternative but to file bankruptcy. He advised her that he would prepare the bankruptcy pleadings over the weekend

and would file the bankruptcy to stay the trial on Monday. Victor represented to both Kimberly and Ms. Gilman that he intended to file his bankruptcy in the Kansas City, Kansas Division.

On the morning of Monday, August 23, Victor sent an e-mail at 5:35 a.m. to Judge Yost, Ms. Gilman, Rick Davis, counsel for GMAC, and Kimberly again advising that he would be filing a chapter 13 bankruptcy petition in the Kansas City Division and that the trial would be automatically stayed upon the filing of the petition under 11 U.S.C. § 362.

Ms. Gilman could not recall whether she saw Victor's early morning e-mail prior to appearing for trial. She reported to Judge Yost's chambers by 9:00 a.m. for trial. Kimberly accompanied her. GMAC's counsel Rick Davis was also present. Victor was not. Shortly after 9:00 a.m., Judge Yost telephoned the presiding Bankruptcy Judge [10] and inquired whether Victor had filed bankruptcy. This Court determined that Victor had not filed bankruptcy as of that time and so advised Judge Yost. Judge Yost then sent an e-mail to Victor at 9:07 a.m., indicating that he had conferred with the Bankruptcy Judge, that no bankruptcy had been filed as of 9:07 a.m., and that Victor was likely in contempt of court for not appearing at the scheduled trial. Judge Yost then dispatched the parties present to Judge Beasley's courtroom for trial. The Court specifically finds that Victor had not filed

**7.** Prior to the August 23 trial setting, GMAC and Victor both requested a continuance of the trial. Those requests were denied by Judge Yost.

**8.** Early on during the pendency of the divorce case, Victor proposed filing a chapter 13 bankruptcy as part of his plan to cure the home mortgage arrearage and stop the foreclosure action. At this time, Victor purport-

edly had prepared a bankruptcy petition but it was not attached to his plan as represented. *See* Defendant's Ex. B.

**9.** Defendant's Ex. A.

**10.** It is the custom of this Court to extend similar courtesies to its distinguished colleagues on the state Bench.

bankruptcy at the time that Judge Yost sent the parties to Judge Beasley for trial.

Sometime between 9:00 and 9:30 a.m., Kimberly attempted two calls from the Sedgwick County Courthouse to Victor at his cell phone number. Victor answered the second call. Kimberly knew that Victor's cell phone did not have service in Kansas City and, when he answered, she knew that he was in Wichita, and not in Kansas City to file his bankruptcy case as he had previously represented. According to Kimberly, Victor indicated he was at the marital home and that he *would* file bankruptcy that day. Victor never told Kimberly that he *had* filed his chapter 13. Victor's version of the phone call differs from Kimberly's only in that he claims he was in route to the federal courthouse in Wichita to file his bankruptcy case when he received the call.

Judge Beasley commenced the divorce/foreclosure trial a few minutes before 10:00 a.m. He first heard the foreclosure matter and granted default judgment against Victor. Ms. Gilman then presented Kimberly's divorce and PFA cases and likewise obtained default judgment. Ms. Gilman estimated that the hearing lasted approximately 45 minutes.[11] As neither Victor nor an attorney on his behalf appeared at the trial, Ms. Gilman volunteered to draft the journal entry and Judge Beasley directed that she do so.

Meanwhile, at the federal courthouse (just across Main Street), Victor filed his pro se Chapter 13 bankruptcy petition at 9:54 a.m.[12] Instead of phoning the state court or simply crossing the street to the courthouse, Victor headed home. He testified that only upon returning to his home later that day did he read Judge Yost's 9:07 e-mail. Notwithstanding Judge Yost's admonitions therein, Victor made no effort to contact Judge Yost to advise him that he had filed bankruptcy.

Later that day, Victor did advise Kimberly and Ms. Gilman that he had filed a petition here and provided the case number. Upon learning of this, Ms. Gilman instructed her staff to verify the bankruptcy filing. Ms. Gilman's staff accessed PACER (Public Access to Court Electronic Records) several times via computer but were unable to verify Victor's bankruptcy case. Indeed, Ms. Gilman was unable to confirm Victor's bankruptcy filing by PACER until Wednesday, August 25. She took no other steps to verify whether Victor had filed bankruptcy. Ms. Gilman admitted that she was generally aware that the commencement of a bankruptcy case triggers an automatic stay but she did not realize that preparing and journalizing the proceedings of August 23 might be a violation of that stay, especially when she had been ordered to do so by Judge Beasley. Ms. Gilman did no independent research to determine the extent of the automatic stay.

In the meantime, Ms. Gilman drafted the Journal Entry of Judgment and Decree of Divorce ("Divorce Journal Entry") which she submitted and Judge Yost entered at 3:58 p.m. on August 24, 2004.[13]

---

**11.** It is not apparent from the record before the Court whether a record of the proceedings before Judge Beasley was made. No party has produced a transcript of those proceedings which would ordinarily reflect the appearances, the time the proceedings commenced, and the proceedings that took place.

**12.** Victor failed to file his statement of financial affairs, schedules and summary of sched-

ules. He also failed to file his chapter 13 plan and pay the required filing fee. Notice of these filing deficiencies were immediately sent by the clerk's office to Victor.

**13.** Defendant's Ex. D. The marital residence was not awarded to either Victor or Kimberly because it was in foreclosure and judgment had been taken against each of them. Victor's cross-claim against Kimberly asserted in

That same day she prepared and Judge Yost entered the Parenting Plan of Court which set forth the orders regarding custody of Victor and Kimberly's minor children and Victor's parenting time with the children [14] as well as the Child Support Worksheet adopted by the Court which set Victor's child support obligation at $507 per month.[15] On August 27, 2004, Ms. Gilman submitted and filed the Final Protection From Abuse Order ("Final PFA Order") in the PFA case against Victor.[16] By this time she had confirmed the filing of Victor's bankruptcy. Ms. Gilman sent file-stamped copies of the journal entries and orders to Victor immediately after they were filed.[17] Kimberly also informed Victor sometime during the week after the trial that the Divorce Journal Entry had been entered.

After the Divorce Journal Entry and Final PFA Order were entered, Ms. Gilman took no action to set aside or vacate the orders. After consulting with her law partners Tom Gilman and Edward Nazar, she concluded it was unnecessary to do so. The Court notes that Messrs. Nazar and Gilman are highly experienced bankruptcy practitioners of long standing and excellent repute in this District. Ms. Gilman took no action to prepare a Qualified Domestic Relations Order ("QDRO") which would have been necessary to effectuate and enforce the award to Kimberly of a portion of Victor's 401(k) retirement fund.[18]

On September 17, 2004, Kimberly filed her Stay Relief Motion pursuant to 11 U.S.C. § 362(d) seeking leave to proceed in Sedgwick County District Court to complete the division of property in the divorce case. Kimberly acknowledges that a division of property could not be made while Victor's bankruptcy was pending and concedes that portion of the Divorce Journal Entry should be set aside.[19] However, she contends that the dissolution of the marriage, child custody, child support, the PFA order and the division of property that is not property of the bankruptcy estate (*i.e.* exempt property) do not violate the automatic stay and are enforceable.

On September 22, 2004, Victor filed his Emergency Motion, seeking sanctions against Kimberly, Ms. Gilman, and her law firm, for violating the automatic stay. At trial, Victor cited three acts that he contends violated the stay: (1) proceeding to trial on August 23 and obtaining judgments by default; (2) filing the Divorce Journal Entry and the Final PFA Order after Victor filed his bankruptcy petition; and (3) failing to take steps to set aside the Divorce Journal Entry and the Final PFA Order. He seeks compensatory sanctions under § 362(h) for what he described as time spent in dealing with the Divorce Journal Entry and the Final PFA Order, but introduced no evidence of the amount of such time or its value. Victor also seeks

---

the foreclosure case, however, was dismissed. Defendant's Ex. D, p. 8, ¶ 20.

**14.** Defendant's Ex. E.

**15.** Defendant's Ex. F. No spousal maintenance was ordered.

**16.** Defendant's Ex. G.

**17.** Because Victor did not appear at trial and therefore defaulted, Ms. Gilman did not prepare and send the proposed Divorce Journal

Entry or Final PFA Order to Victor under Kansas Supreme Court Rule 170(a). The Court likewise concurs that Rule 170(a) is inapplicable under these circumstances.

**18.** Defendant's Ex. D., p. 8, ¶ 21.

**19.** Kimberly suggests that the provisions of the Divorce Journal Entry that are potentially void and involve a division of marital property are paragraphs 17(c), (d), (e) and (f); paragraphs 18(c), (d), (e), (f) and (g); and paragraph 20.

punitive sanctions in an unspecified amount other than generally suggesting "several thousand" dollars. Finally, Victor advised the Court at evidentiary hearing that he did not oppose Kimberly's request for stay relief in order for her to go back to Sedgwick County District Court and conduct whatever proceedings are necessary to conclude the divorce case.

### Analysis and Conclusions of Law
### Burden of Proof

In addressing Kimberly's Stay Relief Motion, Victor has the burden of proof since he is the party opposing stay relief and the stay relief motion does not involve an issue regarding debtor's equity in the property. Victor also has the burden of proof on his Emergency Motion alleging willful violations of the automatic stay and in demonstrating the extent of any damages he claims.[20]

### The Scope of the Automatic Stay

As Victor noted in his papers and in argument, the automatic stay is the lynchpin of the Bankruptcy Code. It provides a newly-filing debtor with an opportunity to catch his breath while reorganizing his affairs and affords all of his creditors a fair opportunity to make claims against the debtor's assets. 11 U.S.C. § 362(a) describes the scope of the automatic stay:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title,

or to recover a claim against the debtor that arose before the commencement of the case under this title;

Section 362(d), the provision under which Kimberly seeks stay relief, provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause ...

Finally, section 362(h), the provision under which Victor seeks sanctions, provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

### The Alleged Stay Violations

Turning to the alleged stay violations, Victor first asserts that Kimberly's going forward with trial on August 23 was a willful violation in which both she and Ms. Gilman are implicated. Judge Yost had previously set both the foreclosure and divorce cases for trial at 9:00 a.m. on August 23, 2004. He called the cases at that time. At 9:00, no bankruptcy case had been filed. Victor did not appear in state court. After making reasonable inquiry of this Court, Judge Yost determined that as of 9:07 a.m. there was no bankruptcy on file and ordered the parties and counsel to Judge Beasley's courtroom for trial. Judge Beasley commenced the trial a few minutes before 10:00 a.m. and the proceedings lasted for 45 minutes. Victor's bankruptcy petition bears the file-stamped time of 9:54 a.m. The Court concludes that Victor failed to prove that the automatic stay

---

**20.** *In re Meis–Nachtrab,* 190 B.R. 302 (Bankr. N.D.Ohio 1995).

was in effect when the state court trial began. The stay came into effect only after the state trial began, but that fact was unknown to Kimberly and Ms. Gilman.

■ Victor contends that informal notice of his *intent* to file bankruptcy is sufficient to trigger the automatic stay. He relies on his pre-dawn e-mail to Judge Yost (which neither Ms. Gilman nor Kimberly saw before the trial) and his phone conversation with Kimberly at 9:30, the content of which is in substantial dispute. He essentially argues that Kimberly and Ms. Gilman proceeded at their own risk after being advised of his imminent filing. Mere expressed intent to file bankruptcy in the future, even if truthful, does not trigger the automatic stay. The clear and unambiguous language of § 362(a) provides that the stay goes into effect when "a petition [is] filed." [21]

■ In *In re Calder*, the Tenth Circuit held that actual notice of a bankruptcy filing is not required to find a stay violation. There, the Tenth Circuit Court of Appeals stated:

> Ordinarily, any action taken in violation of the stay is void and without effect, *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir.1990), even where there is no actual notice of the existence of the stay. *In re Smith*, 876 F.2d 524, 526 (6th Cir.1989).[22]

However in *Calder*, the Tenth Circuit recognized and applied equitable considerations to bar application of the automatic stay, citing the First Circuit decision of *In re Smith Corset Shops, Inc.*[23] In circumstances where the creditor is without actual knowledge of a bankruptcy filing and the debtor's unreasonable behavior contributed to the creditor's violation, a court may find it is inequitable to allow the debtor to claim the protections of the automatic stay.

> In our view, it would be inequitable to allow Calder to claim any protections of the automatic stay under section 362(a) to defeat the Jobs' state court judgment.... Calder actively litigated the state court action and did not provide notice of the pending Chapter 13 proceeding until just before the state court was to enter a final judgment. Calder must bear some responsibility for his unreasonable delay in asserting his rights under section 362(a).... To hold otherwise and permit the automatic stay provision to be used as a trump card played after an unfavorable result was reached in state court, would be inconsistent with the underlying purpose of the automatic stay ... [24]

Here, Victor was well-aware of the impending trial on August 23. He knew that the parties were at the courthouse ready to proceed with trial because Kimberly told as much when she called him at 9:30. When he filed his bankruptcy petition at 9:54 a.m., he could have easily walked across the street to state court and furnished proof of his bankruptcy filing to Judges Yost and Beasley, Kimberly and Ms. Gilman at which point the proceedings

---

21. *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990) (Under section 362(a), *the filing of a bankruptcy petition* creates a broad automatic stay protecting the property of the debtor.). *See also In re Bush*, 169 B.R. 34 (W.D.Va. 1994) (Bankruptcy court's finding of willful stay violation was clearly erroneous where based upon debtor informing creditor that "he might have to file bankruptcy.").

22. 907 F.2d 953, 956.

23. 696 F.2d 971 (1st Cir.1982) (Debtor was not entitled to protection of stay where debtor remained "stealthily silent" while creditor obtained a default judgment from state court in violation of the automatic stay.)

24. 907 F.2d at 956–57.

would undoubtedly have been suspended. Instead, he chose to return home as default judgment was being entered against him. This Court cannot find that commencing and concluding the state court trial constituted a willful violation of the stay. To hold otherwise would be inequitable. Neither the state court, Kimberly or Ms. Gilman had notice that the bankruptcy had been filed as they conducted the trial. A willful violation could only be found if Kimberly and Ms. Gilman had known of the automatic stay and their actions which violated the stay were intentional.[25] Victor failed to prove they knew and this Court is convinced they did not know of the bankruptcy petition at the time of trial.

■ Moreover, some of the actions taken and relief obtained against Victor by default are excepted from the automatic stay. With respect to the Divorce Case, the termination of the marital relationship, the child custody and parenting plan determinations, and the child support obligations are excepted from the automatic stay.[26] Except to the extent Kimberly seeks the recovery of child support from property of Victor's estate, these determinations cannot be construed as efforts having an affect upon property of the estate and were not stayed.[27]

■ An important related issue is whether a Kansas Protection from Abuse proceeding under KAN. STAT.ANN. § 60–3101 et seq. is excepted from the automatic stay. This is a matter of first impression. The Court's research revealed no case law applying the automatic stay to PFA cases, but an examination of the nature of a PFA case under Kansas law leads the Court to conclude that PFA proceedings are not stayed per se by the filing of a bankruptcy. The Protection From Abuse Act is codified in the code of civil procedure, thus technically making it a civil proceeding.[28] Victor conceded at the evidentiary hearing that a PFA order is essentially an injunction or retraining order.

PFA cases, like the restraining orders entered by divorce courts, have quasi-criminal characteristics. The Act is to be liberally construed to "promote the protection of victims of domestic violence from bodily injury or threats of bodily injury and to facilitate access to judicial protection for the victims."[29] Among the conduct defined as "abuse" under the Act is "intentionally attempting to cause bodily injury" and "intentionally placing, by physical threat, another in fear of imminent

25. *In re Diviney*, 225 B.R. 762, 774 (10th Cir. BAP 1998) (adopting willful test of *INSLAW, Inc. v. United States (In re INSLAW, Inc.)*, 83 B.R. 89 (Bankr.D.D.C.1988)); *In re Davis*, 265 B.R. 453 (Bankr.N.D.Fla.2001) (creditor's repossession of vehicle was a technical violation of stay where creditor had no knowledge of debtor's bankruptcy); *In re Esposito*, 154 B.R. 1011 (Bankr.N.D.Ga.1993) (willful violation of stay occurs when creditor violates stay with knowledge of debtor's bankruptcy).

26. *See* 11 U.S.C. § 362(b)(2)(A)(ii); *In re Taylor*, 233 B.R. 639 (S.D.N.Y.1999) (Noneconomic aspects of divorce such as dissolution of the marriage and child custody are not subject to stay);

27. *See In re Carbaugh*, 278 B.R. 512, 524 (10th Cir. BAP 2002) (Filing of bankruptcy petition initiates automatic stay that prevents any attempts to enforce or collect prepetition claims or any actions that would affect property of the estate; the bankruptcy court did not abuse its discretion in lifting the stay in order for debtor's former wife to pursue state court litigation to obtain Qualified Domestic Relations Order with respect to debtor's retirement plan.)

28. KAN. STAT. ANN. § 60–3101 et seq. (1994 and 2003 Supp).

29. KAN. STAT. ANN. § 60–3101(b) (1994).

bodily injury." [30] Violation of a PFA order is a misdemeanor criminal offense and may also constitute a crime by commission of the underlying assault, battery, domestic battery or criminal trespass.[31] PFA orders are required to be entered into a national criminal information center database.[32] The Court does acknowledge that a defendant in a PFA case is afforded none of the constitutional protections available to a criminal defendant.

Nothing in Kimberly's PFA proceeding here sought to or did in fact dispossess Victor of any property.[33] Nothing in the Final PFA Order affects the property of the estate. Instead, the Final PFA Order is purely a restraining order or injunction, prohibiting Victor from abusing, molesting or interfering with the privacy or rights of Kimberly, from contacting or communicating with Kimberly other than as necessary to deal with their children and from coming upon Kimberly's residence or workplace.

The Court concludes that a PFA case more closely resembles a criminal proceeding or a proceeding to enforce a government's police power to provide for the safety of its citizens. Accordingly, it falls under the exceptions to the stay found in 11 U.S.C. § 362(b)(1) or (4).

> The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay—
>
> (1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;
>
> \*　\*　\*　\*　\*　\*
>
> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

PFA proceedings conducted in conjunction with divorce cases can also be deemed ancillary to paternity or alimony and support proceedings which are plainly excepted from the stay by § 362(b)(2). The criminal, police power, and domestic relations exceptions in § 362(b) express a strongly-held Congressional view that pending bankruptcies should not forestall fundamental nonbankruptcy law proceedings dedicated to the preservation of the safety and security of the family. Conducting the PFA trial did not violate the stay. To hold otherwise would permit a potential abuser to hide behind the stay while flouting orders restraining him or her from abusing, battering, injuring, assaulting or threatening a victim during the pendency of the abuser's bankruptcy. That such a result was intended by Congress is incomprehensible to this Court. Having found no stay violation concerning

---

**30.** Kan. Stat. Ann. § 60–3102 (2003 Supp).

**31.** Kan. Stat. Ann. § 21–3843(c) and (d) (2003 Supp.) and § 60–3107(h) (2003 Supp).

**32.** Kan. Stat. Ann. § 60–3112 (2003 Supp).

**33.** Under § 60–3107(a)(2) and (8) of the Act, a court is empowered to grant possession of the parties' residence to plaintiff and provide for possession of personal property, but it may not alter title to real property, § 60–3107(g). Here, Kimberly was granted possession of the parties' marital residence by virtue of the Temporary Order entered when Kimberly filed for divorce, long before Victor filed bankruptcy.

the PFA trial, the Court need not address willfulness.

■ Victor next complains that the entry of the Divorce Journal Entry and Final PFA Order by Kimberly and Ms. Gilman were both willful stay violations. After Victor's bankruptcy filing, and pursuant to Judge Beasley's order, Ms. Gilman proceeded to journalize the default judgments obtained against Victor in the Divorce Case and the PFA Case.[34] Ms. Gilman believed she was fulfilling her duties as an officer of the court. However, by this time, Ms. Gilman had actual notice of Victor's bankruptcy case. Ms. Gilman acknowledged that she learned of Victor's bankruptcy and had a case number later in the day on August 23. The record is silent whether Ms. Gilman in turn informed the trial judge that Victor had filed bankruptcy. The Divorce Journal Entry was entered on August 24 and the Final PFA Order was entered on August 27. The fact that Ms. Gilman was unable to confirm Victor's bankruptcy filing through PACER until August 25 is of no consequence, given her undisputed actual knowledge of the filing when she submitted the journal entries.[35]

■ Because Ms. Gilman had actual notice of the bankruptcy and acted intentionally in preparing and filing the Divorce Journal Entry, she willfully violated the stay.[36] Consistent with *Calder*, the Divorce Journal Entry, to the extent it expresses claims against the debtor or the estate, or effects property of the estate, is void. Because the Final PFA Order is incident to a non-stayed proceeding, it is not void. There is insufficient evidence in the record to indicate that Kimberly participated in the journal entry process other than as a client and the Court does not find that she violated the stay.

■ Victor also complains that when Kimberly and Ms. Gilman failed to vacate or withdraw the Divorce Journal Entry and Final PFA Order, they continued to violate the stay. It is well-established that a party who violates the automatic stay has an affirmative duty to remedy the violation and return the debtor to the status quo.[37] Victor's pleas ring hollow when the Court considers that his own "Emergency" Motion was not filed until nearly a month later on September 22, 2004, and only *after* Kimberly filed her Stay Relief Motion on September 17,

---

**34.** The Court is unpersuaded that the act of filing the journal entries was a ministerial act not subject to the stay. Under Kansas law, a judgment does not become effective until a journal entry is signed by the trial judge and filed. KAN. STAT. ANN. § 60–258. *See In re Marriage of Wilson*, 245 Kan. 178, 180, 777 P.2d 773 (1989) (An oral divorce decree is ineffective when one party dies before the journal entry is filed). *But see In re Papatones*, 143 F.3d 623 (1st Cir.1998) (reducing a judgment to writing and docketing it one day after bankruptcy filed did not violate the stay; docketing of the judgment was a clerical or ministerial act where court directed that judgment be entered and left nothing for further judicial discretion); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2nd Cir.1994) (where debtor filed bankruptcy between oral pronouncement of judgment and ministerial

act of entry of judgment by clerk of court, entry of judgment did not constitute a "continuation of judicial proceeding" in violation of automatic stay.).

**35.** *See In re Clayton*, 235 B.R. 801 (Bankr. M.D.N.C.1998) (willful violation found even though attorney's paralegal placed a call to Voice Case computerized system at bankruptcy clerk's office to verify case status and was informed no chapter 13 case was on file).

**36.** *See In re Diviney*, 225 B.R. 762 (10th Cir. BAP 1998).

**37.** *See e.g., In re Mims*, 209 B.R. 746 (Bankr. M.D.Fla.1997) (creditor had affirmative duty to dismiss garnishment that it had filed against the debtor prepetition).

2004. Nevertheless, Ms. Gilman should have acted more promptly and sought the set-aside of the Divorce Journal Entry in state court or stay relief in this one. Again, Kimberly's involvement here seems tangential at best and no stay violation is attributed to her.

█ Having found that willful stay violations occurred in connection with the presentation and entry of the Divorce Journal Entry and leaving same of record after acquiring knowledge of Victor's petition here, the Court must assess the appropriate remedy. Victor urges the Court to employ § 362(h) which affords an individual "injured" by a stay violation actual damages, including attorney's fees and costs and, where appropriate, punitive damages as well. In his summation, Victor asserted that he had been damaged to the extent of a "few thousand dollars" and that the Redmond firm should be sanction in some amount. Victor also testified that, after he allegedly violated the PFA Order, he was jailed and spent a night at the Sedgwick County Detention Center.

█ Willful violation of the automatic stay is a matter of serious concern to this Court and is not taken lightly. Nothing is more central to this Court's protection of debtors than the stay. As a partner in the firm of Redmond & Nazar, Ms. Gilman had access to bankruptcy professionals having some thirty years' experience practicing in the bankruptcy courts of this District. They know better than to enter a state court judgment when they have acquired actual notice of a bankruptcy case having been filed. While it is so that many of the matters treated in the Divorce Journal Entry are subjects excepted from the stay, this Court expects that any question about the applicability of the stay will always be resolved by counsel in favor of seeking relief in this Court before taking action in another. At the same time, the Court recognizes that Ms. Gilman's efforts were undertaken in the zealous representation of her client in what has surely been a trying matter. Moreover, Ms. Gilman conducted herself with dignity while testifying here and accepted responsibility for any error she may have made. That demonstrates a strong sense of professionalism on her part. That said, all counsel should understand that this Court's threshold for "cuteness" with respect to the stay is very low and that further violations of this nature will trigger a swift, certain and expensive response.

Victor proved no damages.[38] Because this Court has previously found that entering the Final PFA Order did not violate the stay, Victor cannot be compensated for his night in jail which resulted from that Order. Similarly, Victor made no showing of his attorneys fees and expenses incurred in prosecuting the stay violation motion. While Victor testified that he devoted a great deal of time "dealing with" the Divorce Journal Entry and the Final PFA Order, he offered no time records or evidence of the value of that time. Nor was there any evidence that the Divorce Journal Entry had been enforced resulting in a monetary loss to Victor. Ms. Gilman had not prepared a QDRO order to effectuate a transfer of Victor's retirement or 401(k) account. Because it was incumbent upon Victor to prove his damages with reasonable certainty, he has failed his burden of proof and no actual damages will be assessed.[39]

**38.** *In re Clayton, supra* at 810–811 (Debtor had the burden to demonstrate the extent of any damages.).

**39.** *In re Beair,* 168 B.R. 633, 637 (Bankr. N.D.Ohio 1994).

Victor also seeks punitive damages against Ms. Gilman and the Redmond firm for these willful stay violations. The factors to be considered in making such an award were enumerated by the Tenth Circuit Bankruptcy Appellate Panel in *In re Diviney*.[40] They are: (1) the nature of the defendant's conduct; (2) the defendant's ability to pay; (3) the motives of defendant; and (4) provocation by debtor. At the instance of the state court, Ms. Gilman prepared and submitted the Divorce Journal Entry. She took no affirmative steps whatever to enforce it. No execution proceeded and no QDRO was filed. No transfers of property have been effectuated and no monetary loss occurred. Ms. Gilman's actions were taken in response to orders of another court. They do not appear to be motivated by any vindictiveness or malice.[41] Indeed, given the tortured history of the divorce case and this Court's long familiarity with the manner in which Victor goes about his business, Ms. Gilman could understandably argue that she was provoked. In light of the circumstances, the violations are understandable though not excusable. Punitive damages are simply not appropriate under the facts of this case.

### What is Void

As noted above, actions taken in violation of the automatic stay are void.[42] The Court concludes that the Divorce Journal Entry, having been entered postpetition and without stay relief being granted by this Court, is void, at least insofar as it recites any claim against the debtor or affects property of the bankruptcy estate. With respect to the findings concerning the dissolution of the marriage, the custody and parenting of the children, and support, these matters are clearly excepted from the stay by § 362(b)(2). The Journal Entry provisions treating those matters remain in force. As set out above, the PFA proceeding was not stayed and therefore the PFA Final Order is not void. This Court leaves it to the state court to determine whether further trial proceedings should be conducted incident to the entry of judgment in the divorce case once the stay has been lifted. This Court specifically declines to find the trial itself to be "void," because conducting it did not violate the stay and because the "judgment" entered at that time would not, as a matter of Kansas civil procedure, become effective until entered on that court's docket as provided for in KAN. STAT. ANN. § 60–258.

### Kimberly's Stay Relief Motion

Kimberly seeks relief from the automatic stay for cause under § 362(d)(1). Victor stated on the record that he did not oppose granting this relief to allow judgment to be entered on the non-property aspects of the divorce case. The determination that cause exists to lift the stay is a matter of sound discretion and is made on a case-by-case basis.[43] Kimberly seeks re-

---

**40.** 225 B.R. 762, 777 (10th Cir. BAP 1998) (Factors for awarding punitive damages are (1) nature of defendant's conduct; (2) defendant's ability to pay; (3) motives of defendant; and (4) provocation by debtor.)

**41.** *In re Clayton,* 235 B.R. 801 (Bankr. M.D.N.C.1998).

**42.** *In re Calder, supra.*

**43.** *In re Carbaugh,* 278 B.R. 512, 525 (10th Cir. BAP 2002) (Cause existed to modify the stay so that debtor's former wife could pursue state court litigation concerning the parties' interest in the debtor's retirement plan.); *Pursifull v. Eakin,* 814 F.2d 1501 (10th Cir.1987) (Even where bankruptcy court would abstain from hearing oil and gas lease litigation, it was necessary to lift the stay in order to permit the state court to determine the oil and gas issues).

lief from the stay to finalize the division of property between Kimberly and Victor and enter judgment in the Divorce Case.

 As set forth in *In re Carbaugh*,[44] factors relevant to the determination of whether the stay should be lifted to permit litigation to continue in another forum include: judicial economy, the degree to which the state court case has progressed, and whether the issues involve matters of state law. The Divorce Case has been on file in the Sedgwick County domestic division since February of this year and has progressed through trial. Judicial economy would be ill-served for the parties to be forced to start over with those claims here. Moreover, federal courts are poorly suited to handle domestic relations matter. The property division issues inherent in this divorce case may be handled best and more quickly reached by state courts. Completing the divorce case in state court will not interfere with administration of the bankruptcy estate. This Court routinely abstains from hearing and deciding family law cases and does so here pursuant to 28 U.S.C. § 1334(c)(2). The Court concludes that cause exists to lift the automatic stay and allow Kimberly to continue in state court and complete the Divorce Case through judgment.

*Conclusion*

The filing of the Divorce Journal Entry and the failure to set aside this journal entry were committed with actual notice of Victor's bankruptcy and constitute willful violations of the automatic stay on the part of Ms. Gilman. Kimberly did not violate the stay. No showing of actual damages has been made by Victor and therefore, neither actual damages nor punitive damages will be assessed against Kimberly, Ms. Gilman, or the law firm of Redmond

and Nazar. Except as to the dissolution of the marriage, the custody and parenting of the children, and support, the Divorce Journal Entry is void and of no effect. The trial proceedings which took place on August 23, 2004 are unaffected by this Order or the bankruptcy filing.

Victor's Emergency Motion is DENIED.

Kimberly's Stay Relief Motion is GRANTED for cause. Stay relief is granted to permit Kimberly to return to state court to complete the Divorce Case through the entry of judgment.

IT IS SO ORDERED.